UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JULIA BARTON, a/k/a Julia Benson; and
McKENNA S. FRANK, a/k/a McKenna S. Brodie,

                              Plaintiffs,

v.                                                          1:19-CV-1061
                                                            (GTS/DJS)
WARREN CTY.; NATHAN YORK, in his official
capacity as Sheriff of Warren Cty. and individually,
a/k/a Bud; and AL MADAY, in his official capacity
as Div. Commander of the Warren Cty. Corr.
Facility and Individually,

                              Defendants.
_____

APPEARANCES:                                      OF COUNSEL:

OFFICE OF RONALD J. KIM                           RONALD J. KIM, ESQ.
  Counsel for Plaintiffs
P.O. Box 318
Saratoga Springs, NY 12866

JOHNSON & LAWS, LLC                               GREGG T. JOHNSON, ESQ.
  Counsel for Defendants                          LORAINE C. JELINEK, ESQ.
648 Plank Road, Suite 204
Clifton Park, NY 12020

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this civil rights action filed by Julia Barton ("Plaintiff

Barton") and McKenna S. Frank ("Plaintiff Frank") against Warren County ("Defendant

County"), Nathan York ("Defendant York"), and Al Maday ("Defendant Maday") (collectively

"Defendants"), is Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim

pursuant to Fed. R. Civ. P. 12(b)(6) and/or for lack of subject-matter jurisdiction pursuant to Fed.

R. Civ. P. 12(b)(1).  (Dkt. No. 4.)  For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part.

## I.      RELEVANT BACKGROUND

### A.      Summary of Plaintiffs' Complaint

Generally, liberally construed, Plaintiffs' Complaint alleges that Defendants discriminated against and retaliated against both Plaintiff Barton and Plaintiff Frank after they informed Defendants that they were pregnant.  (*See generally* Dkt. No. 1 [Plfs.' Compl.].)  Based on these factual allegations, Plaintiffs' Complaint asserts the following eight claims against all Defendants: (1) a sexual discrimination claim through a hostile work environment under Title VII, (2) a sexual discrimination claim through a hostile work environment under New York State Human Rights Law ("NYSHRL"), (3) a sexual discrimination claim through disparate treatment under Title VII, (4) a sexual discrimination claim through disparate treatment under NYSHRL, (5) a pregnancy discrimination claim under Title VII, (6) a pregnancy discrimination claim under NYSHRL, (7) a retaliation claim under Title VII, and (8) a retaliation claim under NYSHRL. (*Id.*)  Familiarity with the factual allegations supporting these claims in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for the review of the parties. (*Id.*)

### B.      Parties' Briefing on Defendants' Motion to Dismiss

Generally, in support of their motion to dismiss, Defendants assert the following five arguments: (1) all federal claims against Defendants York and Maday must be dismissed as a matter of law because Second Circuit precedent maintains that Title VII does not provide for individual liability; (2) all of Plaintiffs' state law claims under NYSHRL must be dismissed

because Plaintiffs failed to timely serve a Notice of Claim ("NOC") on Defendants under NYSHRL; (3) Plaintiffs fail to plead facts plausibly suggesting that they were exposed to a hostile work environment under Title VII; (4) Plaintiffs fail to state a retaliation claim under both federal and state law because they failed to exhaust their administrative remedies before filing suit, and do not allege facts plausibly suggesting that Defendants retaliated against Plaintiffs under either Title VII or NYSHRL; and (5) Plaintiffs fail to state disparate treatment claims under Title VII because they fail to allege facts plausibly suggesting that either Plaintiff was treated any differently than any other employee who was unable to fully perform the essential functions of their jobs.  (*See generally* Dkt. No. 4-4 [Defs.' Memo. of Law].)

Generally, in opposition to Defendants' motion, Plaintiffs assert the following six arguments: (1) Defendants impermissibly assert, and rely on, facts in their motion to dismiss, which should be disregarded as a matter of law; (2) Plaintiffs have sufficiently pled their pregnancy claims because they have alleged facts plausibly suggesting that both Plaintiffs suffered adverse employment actions because they were pregnant; (3) Plaintiffs have sufficiently pled their hostile work environment claims because they have alleged facts plausibly suggesting that they were subject to an objectively a hostile work environment; (4) Plaintiffs have sufficiently pled their disparate treatment claims because they have alleged facts plausibly suggesting that they were treated differently than each other; (5) Plaintiffs have sufficiently pled their retaliation claims because they have alleged facts plausibly suggesting Defendants retaliated against them based on their pregnancy-status; and (6) Plaintiffs' NYSHRL claims against Defendants York and Maday are properly before the Court, because a NOC is not required to assert such claims against county employees.  (*See generally* Dkt. No. 5 [Plfs.'

Memo. of Law].)

Generally, in reply to Plaintiffs' response, Defendants asserts the following five arguments: (1) Plaintiffs' federal claims against Defendants York and Maday must be dismissed as a matter of law because, in their opposition memorandum of law, Plaintiff's failed to respond to Defendants' challenges to those claims, (2) all of Plaintiffs' state law claims must be dismissed against all Defendants because of Plaintiffs' concessions in their opposition memorandum, (3) Plaintiffs admit they cannot plead any cognizable claim for a hostile work environment under Title VII and NYSHRL, (4) Plaintiffs' disparate treatment claims are patently defective because they fail to plead facts that compare similarly situated individuals to Plaintiffs, and (5) Plaintiffs fail to state a claim for retaliation because Plaintiff Barton failed to allege a single subsequent retaliatory act and Plaintiff Frank failed to show a causal connection between the adverse action and alleged retaliatory motive. (*See generally* Dkt. No. 10.)

## II.   RELEVANT LEGAL STANDARDS

### A.   Legal Standard Governing a Motion to Dismiss for Lack of Subject-Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory authority to adjudicate it. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction. *Makarova*, 201 F.3d at 113. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Id.* (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]). When a court

4

evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

**B.      Legal Standard Governing a Motion to Dismiss for Failure to State a Claim**

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of

what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at

212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of

"enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision

on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases);

*Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing

Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal"

notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d

ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding

that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.

2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129

S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an

appellate decision holding that a complaint had stated an actionable antitrust claim under 15

U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court

"retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957),

that "a complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an

actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an

actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a

pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the

pleading must contain at least "some factual allegation[s]." *Id*. at 1965.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense . . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (citations omitted).

Finally, with regard to what documents are considered when a dismissal for failure to state a claim is contemplated, generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[1]

---

[1]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint . . . . Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint . . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

### III.   ANALYSIS

As a threshold matter, the Court must elaborate on the standard to be applied at the

pleadings stage for Title VII and NYSHRL discrimination claims.  At the pleadings stage, "the

allegations in the complaint need only give plausible support to the reduced prima facie

requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation."

*Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015) (citing *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 [1973] ["*McDonnell Douglas*"]).  The Supreme Court has clearly

stated that an "employment discrimination plaintiff need not plead a prima facie case of

discrimination[,]" because the *McDonnell Douglas* burden shifting standard is "an evidentiary

standard, not a pleading requirement."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 515

[2002]).  As a result, to defeat a motion to dismiss in a "Title VII discrimination case, a plaintiff

must plausibly allege that (1) the employer took adverse action against him, and (2) his race,

color, religion, sex, or national origin was a motivating factor in the employment decision."

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).  "[A]s long as the

complaint gives the defendant 'fair notice of [the plaintiff's] claim and the grounds upon which it

rests,' and 'indicate[s] the possibility of discrimination and thus present[s] a plausible claim for

disparate treatment,' the complaint satisfies" Fed. R. Civ. P. 8(a).  *Marchioli v. Garland Co.,*

*Inc.*, 11-CV-0124, 2011 WL 1983350, at *3 (N.D.N.Y. 2011) (D'Agostino, J.) (quoting *Boykin*

*v. KeyCorp*, 521 F.3d 202, 214-16 [2d Cir. 2008]).  "The burden of making this showing is not

onerous."  *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 228 (2015) (internal quotation

marks omitted).  The plaintiff may satisfy this burden by "alleging facts that directly show

discrimination or facts that indirectly show discrimination by giving rise to a plausible inference

of discrimination."  *Vega*, 801 F.3d at 87 (citing *Littlejohn*, 795 F.3d at 310).

"An employee who alleges status-based discrimination under Title VII need not show that the causal link between injury and wrong is so close that the injury would not have occurred but for the act."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013) ("*Nassar*"). "So-called but-for causation is not the test. It suffices instead to show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision."  *Nassar*, 570 U.S. at 343; *see also Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1739-40 (2020) (explaining how Title VII liability can be found through either but-for causation or the motivating factor standard).  Accordingly, "[t]he facts required . . . to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination.  They need only give plausible support to a minimal inference of discriminatory motivation."  *Littlejohn*, 795 F.3d at 311.

"Because NYSHRL claims are subject to the same standard as Title VII claims," the Court will consider them together, unless noted otherwise.  *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 246 (E.D.N.Y. 2015) (quoting *Salazar v. Ferrara Bros. Bldg. Materials Corp.*, 13-CV-3038, 2015 WL 1535698, at *5 [E.D.N.Y. Apr. 6, 2015]); *see also Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 n.2 (2d Cir 2010) ("We review discrimination claims brought under the NYSHRL according to the same standards that we apply to Title VII discrimination claims.").

> ### A.   Whether the Court Can Consider Defendants' Additional Facts Contained in Their Memorandum of Law

After carefully considering the matter, the Court answers the question in the negative for

the reasons stated below.

As explained above in Part II.B. of this Decision and Order, generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[2]  A court may take judicial notice at "any stage of the proceeding," of

---

[2]      *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary

any fact "that is not subject to reasonable dispute because" it "can be accurately and readily

determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid.

201(b)(2), (d).

In this case, the additional facts relied on by Defendant County were not attached to

Plaintiffs' Complaint but to its memorandum of law in support of its motion to dismiss.

Defendant County's additional facts cannot be considered "integral" to Plaintiffs' Complaint

because the Complaint does not rely (heavily or otherwise) on these additional facts in support of

Plaintiffs' claims and/or factual allegations. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147,

153 (2d Cir. 2002) (explaining that a document can be "integral" to a complaint where the

complaint "relies heavily upon its terms and effect.").  Moreover, the Court may not take judicial

notice of the additional facts within Defendants' memorandum of law because those facts are not

generally known within the Court's jurisdiction nor can they be "accurately and readily

determined from [accurate] sources," at this stage of the litigation.  Fed R. Evid. 201(b)(2).  The

only issue that remains, then, is whether the additional facts may be deemed incorporated by

reference in the Complaint.

Plaintiffs' Complaint references an alleged inability by Plaintiff Frank to perform the

essential functions of a corrections officer. (Dkt. No. 1, at ⁋ 63 ["Instead, at this meeting, these

senior officers retaliated against Brodie and made unsubstantiated allegations of her failure to

perform the essential functions of a Correctional Officer."].)  However, this singular reference is

not enough to permit the Court to consider the additional facts on which Defendants rely, which

pertain to the circumstances surrounding Plaintiff Frank's employment.  (Dkt. No. 4-4, at 10-12

_____

judgment.") (internal quotation marks and citation omitted).

[Defs.' Memo. of Law, asserting that Plaintiff Frank (1) failed to conduct a housing unit inspection, (2) was observed to be falling asleep while on duty on multiple occasions, and (3) was found in a housing unit she was not assigned to].)  *See also McLennon v. City of New York*, 171 F. Supp. 3d 69, 88 (E.D.N.Y. 2016) ("To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents.") (internal quotation marks omitted); *cf. Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) ("Limited quotation does not constitute incorporation by reference.").  Simply stated, Plaintiffs' Complaint does not provide the Court with enough detail for a reader to reasonably discern whether the "unsubstantiated allegations" Plaintiff Frank refers to in Plaintiffs' Complaint are the precise allegations detailed in the additional facts on which Defendants seek to rely in their memorandum of law.  Accordingly, the Court cannot rely on Defendants' additional facts under the incorporated by reference theory.

For all of these reasons, the Court will not consider Defendant County's additional facts when determining the outcome of Defendants' motion to dismiss.

### B.    Whether the Court Has Subject-Matter Jurisdiction Over Plaintiffs' State Law Claims

Because Defendants have moved for dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the Court must first assess whether it has subject-matter jurisdiction over the claims challenged in Plaintiffs' Complaint.  *See Wong v. CKX, Inc.*, 890 F. Supp. 2d 411, 414-15 (S.D.N.Y. 2012) ("When presented with a motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction and Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted, the Court must first analyze the Rule 12(b)(1) motion to determine whether the Court has subject matter jurisdiction necessary to consider the merits of the action.").  After

13

carefully considering the matter, the Court answers this question in the negative for the reasons

stated in Defendants' memoranda of law.  (Dkt. No. 4-4; Dkt. No. 10.)  To those reasons, the

Court adds the following analysis, which is intended to supplement, and not supplant,

Defendants' reasoning.

   "'State claims brought under state law in federal court are subject to state procedural

rules.'"  *Styles v. Westchester Cty.*, 18-CV-12021, 2020 WL 1166404, at *6 (S.D.N.Y. Mar. 10,

2020) (quoting *Russell v. Westchester Cmty. Coll.*, 16-CV-1712, 2017 WL 4326545, at *5

[S.D.N.Y. Sept. 27, 2017]).  "In general, '[t]he service of a notice of claim is a condition

precedent to the maintenance of an action against a public corporation to recover damages for a

tortious or wrongful act."  *Fotopoulous v. Bd. of Fire Comm'rs of Hicksville Fire Dist.*, 76

N.Y.S. 3d 592, 594 (2d Dep't 2018).  Where a notice of claim is required by law as a condition

precedent to the commencement of an action against a county, or employee thereof, "the notice

of claim shall comply and be served in accordance with the provisions of this section within

ninety days after the claim arises."  N.Y. Gen. Mun. Law § 50-e(1)(a); *Russell*, 2017 WL

4326545, at *5; *see also Bielski v. Green*, 674 F. Supp. 2d 414, 427 (W.D.N.Y. 2009)

(explaining that N.Y. County Law Section 52 makes Section 50-e of the N.Y. General Municipal

Law applicable to actions against a county).  This requirement applies to both tort and

discrimination claims.  *Hamilton v. Cty. of Onondaga*, 15-CV-1333, 2018 WL 4554496, at *16

(N.D.N.Y. 2018) (Sannes, J.) (citing *Grasso v. Schenectady Cty. Pub. Library*, 817 N.Y.S. 2d

186 [3d Dep't 2006]).  "Notice of claim requirements are construed strictly by New York state

courts.  Failure to comply with these requirements ordinarily requires dismissal for failure to

state a cause of action."  *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793-94 (2d Cir.

1999).

### 1.     Claims Against Defendant County

On October 8, 2018, Plaintiff Barton informed her supervisor of her pregnancy and her request for accommodations.  (Dkt. No. 1, at ¶ 34.)   On October 9, 2018, Plaintiff Barton was informed that no accommodations would be provided.  (*Id.* at ¶ 36-38.)  As a result, under N.Y. Gen. Mun. Law Section 50-e, Plaintiff Barton was required to serve a NOC no later than January 7, 2019.  However, Plaintiffs' Complaint fails to allege facts plausibly suggesting that Plaintiff Barton served a timely NOC on Defendant County.  (*See generally* Dkt. No. 1.)

With respect to Plaintiff Frank, she alleged that her claims arose on or about July 18, 2018.  (*Id.* at ¶¶ 52-67.)  Like Plaintiff Barton, Plaintiff Frank was required to serve a NOC no later than October 16, 2018.  However, Plaintiffs' Complaint fails to allege facts plausibly suggesting that Plaintiff Frank served a timely NOC on Defendant County, contrary to the requirements of N.Y. Gen. Mun. Law Section 50-e(1)(a).

Indeed, Plaintiffs concede that they were required to serve a NOC on Defendant County and that no such timely NOC was ever served for either Plaintiff.  (Dkt. No. 5, at 16.)  Because neither Plaintiff Barton nor Plaintiff Frank served a NOC on Defendant County within the statutorily imposed ninety-day window, Plaintiffs failed to comply with a required condition precedent to sue Defendant County under NYSHRL.

For these reasons, the Court finds that each of Plaintiffs' NYSHRL claims (counts two, four, six, and eight) must be dismissed against Defendant County due to Plaintiffs' failure to serve a timely NOC on Defendant County.

Some discussion is appropriate regarding the nature of the dismissal in this action.

Ordinarily, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted).[3]  "[A]n opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile." *Sorrentino v. Barr Labs. Inc.*, 09-CV-0591, 2010 WL 2026135, at *5 (May 20, 2010 N.D.N.Y.) (Suddaby, C.J.).  However, where the Court lacks subject-matter jurisdiction over a claim, it lacks the power to dismiss that claim with prejudice (even if the Court were to find that, as here, better pleading would not cure Plaintiffs' claims).

For this reason, each of Plaintiffs' NYSHRL claims against Defendant County are dismissed without prejudice.

---

[3]     *Accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile.  Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here . . . there is no merit in the proposed amendments, leave to amend should be denied").  The Court notes that two Second Circuit cases exist reciting the standard as being that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Federal Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).  The problem with these cases is that their "rule out any possibility, however likely it might be" standard is rooted in the "unless it appears beyond doubt" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which was "retire[d]" by the Supreme Court in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007).  *See Gomez v. USAA Federal Sav. Bank*, 171 F.3d 794, 796 (relying on *Branum v. Clark*, 927 F.2d 698, 705 [2d Cir. 1991], which relied on *Conley v. Gibson*, 355 U.S. 41, 45-46 [1957]).  Thus, this standard does not appear to be an accurate reflection of the leave to amend guidelines under the current "plausibility standard." *Aschfroft v. Iqbal*, 556 U.S. 662 (2009).

16

### 2.      Claims Against Individual Defendants

For reasons similar to those stated above in Part III.B.1. of this Decision and Order, the Court finds that both Plaintiffs also failed to serve a NOC on Defendants York and Maday within ninety days after their claims arose.  Granted, "[b]y its plain language, [N.Y. County Law] Section 52 applies to any action brought against the County."  *Henneberger v. City of Nassau*, 465 F. Supp. 2d 176, 199 (E.D.N.Y. 2006).  "It is well settled that the failure to file a notice of claim bars state claims against individual defendants sued in their official capacities."  *Brooks v. Cty. of Nassau*, 54 F. Supp. 3d 254, 258 (E.D.N.Y. 2014).  "However, as for state claims against an individual defendant in his individual capacity, 'service of a notice of claim is not a condition precedent to the commencement of an action against a county's employees or agents unless the county is required to indemnify the individual defendants.'"  *Brooks*, 54 F. Supp. 3d at 258 (quoting *Olsen v. Cty. of Nassau*, 05-CV-3632, 2008 WL 4838705, at *4 [E.D.N.Y. Nov. 4, 2008]).  Thus, a county's duty to indemnify turns on whether the defendant was acting within his or her scope of employment.  *Id.*

In this case, Plaintiffs' Complaint fails to plead facts plausibly suggesting that either individual Defendant acted outside the scope of his official duties (and in his own personal interest) when interacting with either Plaintiff.  Instead, Plaintiffs' Complaint alleges facts plausibly suggesting that each action taken by Defendants York and Maday was taken within the scope of their employment.  (Dkt. No. 1, at ¶¶ 36-39, 53, 61-64.)  Because Plaintiffs failed to satisfy a condition precedent for bringing claims against Defendants York and Maday in their official capacity, and failed to plead facts plausibly suggesting either Defendant was acting outside of his official duties, the Court is required to dismiss Plaintiffs' state law claims against

Defendants York and Maday in both their individual and official capacities, for lack of subject-matter jurisdiction.  As previously stated in Part III.B.1. of this Decision and Order, where the Court lacks subject-matter jurisdiction over a claim, it lacks the power to dismiss that claim with prejudice (even if the Court were to find that, as here, better pleading would not cure Plaintiffs' claims).

Accordingly, for all of these reasons, the Court finds that both Plaintiff Barton's and Plaintiff Frank's NYSHRL claims (counts two, four, six, and eight) are dismissed without prejudice against all Defendants.

### C.   Whether Plaintiffs' Title VII Hostile Work Environment Claims Should Be Dismissed for Failure to State a Claim

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law.  (Dkt. No 4-4; Dkt. No. 10.)  To those reasons, the Court adds the following analysis, which is intended to supplement, and not supplant, Defendants' reasoning.

To state a claim for a Title VII hostile work environment violation, "a plaintiff must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive–that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks omitted) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 [2d Cir. 2001]).  "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be

abusive." *Littlejohn*, 795 F.3d at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 [2d Cir. 2014]). "Hostile work environment claims, however, 'are meant to protect individuals from abuse and trauma that is severe' and 'are not intended to promote or enforce civility, gentility, or even decency.'" *Prindle v. City of Norwich*, 15-CV-1481, 2018 WL 1582429, at *10 (N.D.N.Y. Mar. 27, 2018) (Suddaby, C.J.) (quoting *Curtis v. DiMaio*, 46 F. Supp. 2d 206, 213-14 [E.D.N.Y. 1999], *aff'd*, 205 F.3d 1322 [2d Cir. 2000]). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 [2d Cir. 2002]).

"The test for the first prong is whether the employment environment was 'objectively hostile'–that is, whether the environment was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Little v. Nat'l Broad. Co., Inc*., 210 F. Supp. 2d 330, 388 (S.D.N.Y. 2002) (citations omitted). "The Supreme Court has emphasized that the standard for judging whether a work environment is objectively hostile must be sufficiently demanding so as to prevent Title VII from becoming a general civility code." *Little*, 210 F. Supp. 2d at 388 (internal quotation marks and citations omitted); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). "Courts must distinguish between merely offensive and boorish conduct and conduct that is sufficiently severe or pervasive as to alter the conditions of employment." *Id*. (internal quotation marks and citations omitted). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788

(1998) (noting that "[w]e have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment").

"In determining whether a workplace is objectively hostile, a court should look at the totality of the circumstances." *Alfano*, 294 F.3d at 374 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 [1993]). Factors that courts should examine include "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "When evaluating the 'quantity, frequency, and severity' of the incidents, the court must look at the incidents 'cumulatively in order to obtain a realistic view of the work environment.'" *Little*, 210 F. Supp. 2d at 389 (citing *Schwapp v. Town of Avon*, 118 F.3d 106, 111 [2d Cir. 1997]). "Ultimately, to avoid dismissal under [Fed. R. Civ. P.] 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the condition of her employment altered for the worse,' and '[the Second Circuit] [has] repeatedly cautioned against setting the bar too high' in this context." *Patane*, 508 F.3d at 113 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 [2d Cir. 2003] [emphasis omitted]).

### 1.    Claims Against Defendant County

Where "a co-employee of the plaintiff is the alleged harasser, an employer will generally not be liable unless the employer either [1] provided no reasonable avenue of complaint or [2] knew of the harassment but did nothing about it." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), *and Faragher*, 524 U.S. 775. When determining whether an employer did "nothing"

20

about a co-employee's alleged harassment, courts analyze the *reasonableness* of the employer's response to the plaintiff's complaints. *Snell v. Suffolk Cty.*, 782 F.2d 1094, 1104 (2d Cir. 1986) ("[W]e hold today that once an employer has knowledge of a racially combative atmosphere in the workplace, he has a duty to take reasonable steps to eliminate it.").[4]  Furthermore, as the Second Circuit has explained,

> Whether the company's response was reasonable has to be assessed from the totality of circumstances.  Factors to be considered in this analysis are the gravity of the harm being inflicted upon the plaintiff, the nature of the employer's response in light of the employer's resources, and the nature of the work environment.

*Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 65 (2d Cir. 1998) (citations omitted).  Other factors may include (1) the amount of time that elapsed between the notice and remedial action, (2) whether the response taken comported with the employer's policies, (3) whether the co-employees complained of were confronted and reprimanded, and (4) whether the response ended

---

[4]        *See also Brabson v. The Friendship House of W. N.Y.,* 46 F. App'x 14, 17 (2d Cir. 2002) ("[The defendant] failed to show that [the plaintiff's harasser] was adequately reprimanded or that any reasonable steps were taken to prevent future conduct."); *Murray v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995) ("An employer who has notice of a discriminatorily abusive environment in the workplace has a duty to take reasonable steps to eliminate it."), *accord*, *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir. 1998); *Faulkner v. Niagara Mohawk Power Corp.*, 05-CV-0974, 2006 WL 3207815, at *7 (N.D.N.Y. Nov. 03, 2006) (McAvoy, J.) (stating that an employer will not be held liable for a hostile work environment when the employer takes "prompt and reasonable remedial action" in response to a complaint); *Dawson v. County of Westchester*, 351 F. Supp.2d 176, 192 (S.D.N.Y. 2004) (characterizing issue as whether the employer, once notified of the harassment, took "reasonable care to prevent the harassment or act promptly to correct it"); *Rechichi v. Eastman Kodak Co.*, 02-CV-6249, 2004 WL 1698333, at *6-7 (W.D.N.Y. Jan. 21, 2004) (stating that, "[w]here the harassment was caused by a non-supervisory co-worker, the burden falls to the plaintiff to prove that the employer did not take reasonable steps to address the situation") [internal quotation marks and citations omitted]; *cf.* 29 C.F.R. § 1604.11(d) (1997) (employer is liable for sexual harassment by co-worker if it "knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action").

the harassment.  *Finnerty v. William H. Sadlier, Inc.*, 176 F. App'x 158, 162 (2d Cir. 2006);

*Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 154 (2d Cir. 1997).[5]

 Here, based on the totality of the circumstances, the Court finds that Plaintiffs' Complaint

fails to allege any facts plausibly suggesting that Plaintiff Barton personally found her work

environment to be hostile or abusive.  (*See generally* Dkt. No. 1, at ¶¶ 27-48, 68-74.)  Plaintiffs'

Complaint also fails to allege any facts plausibly suggesting that a reasonable person would find

that Plaintiff Barton was subjected to a hostile or abusive work environment.  (*Id.*)  Moreover, to

the extent that Plaintiff Barton relies on the rejection of reasonable accommodations to plausibly

suggest a hostile work environment (Dkt. No. 5, at 10), she misconstrues the law.  *See Murtha v.*

*New York State Gaming Comm'n.*, 17-CV-10040, 2019 WL 4450687, at *13 (S.D.N.Y. Sept. 17,

2019) ("[A] defendant's failure to provide a reasonable accommodation does not in itself

constitute evidence of a parallel claim for . . . [a] hostile work environment."); *Berger v. New*

*York City Police Dep't*, 304 F. Supp. 3d 360, 368 (S.D.N.Y. 2018).  Accordingly, Plaintiff

Barton has failed to allege facts plausibly suggesting she was subjected to a hostile work

environment.

 Unlike Plaintiff Barton, Plaintiff Frank alleged that on July 5, 2018, a fellow officer

commented to another officer that she "was lazy since she had become pregnant."  (Dkt. No. 1,

at ¶ 56.)  Plaintiff Frank also alleged that the same officer, on at least three occasions, "made

negative comments about her pregnancy and her capacity to perform her duties as a corrections

officer."  (*Id.* at ¶ 57.)  Additionally, Plaintiff Frank alleged that the same officer commented that

---

[5] *See also Hanna v. Boys and Girls Home and Family Servs., Inc.*, 212 F. Supp.2d 1049, 1063 (N.D. Iowa 2002) (collecting cases).

her "reasonable accommodation was 'unfair.'"  (*Id.* at ⁋ 58.)  In July 2018, Plaintiff Frank

reported at least two of the above incidents to senior officers and submitted a written report.  (*Id.*

at ⁋ 59-60.)  As alleged, these comments sufficiently target Plaintiff Frank's sex because of her

pregnancy, and plausibly suggest that Plaintiff Frank subjectively found that this conduct

amounted to a hostile work environment.

However, Plaintiff Frank fails to show that she was subjected to an objectively hostile

work environment.  "[S]imple teasing, offhand comments, and isolated incidents (unless

extremely serious) will not amount to discriminatory changes in terms and conditions of

employment."  *Faragher*, 524 U.S. at 788.  "[R]un-of-the-mill workplace conflicts, troubling

though they may be, do not rise to the level of an objectively hostile workplace."  *Harvin v.*

*Manhattan & Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 128 (2d Cir. 2019).

"When analyzing severity, a court 'must distinguish between merely offensive or boorish

conduct and conduct that is sufficiently severe as to alter the conditions of employment.'"

*Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 780-81 (S.D.N.Y. 2019)

(quoting *Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 66 [S.D.N.Y. 2015]).

Even when her Complaint is viewed in the light most favorable to Plaintiff Frank, the

Court finds that she has failed to allege any facts plausibly suggesting sufficiently severe or

pervasive misconduct to alter the conditions of her employment.  The three alleged negative

comments from her fellow corrections officer occurred over the course of a one-month period.

*See Lessambo v. PricewaterhouseCoopers, L.P.*, 08-CV-6272, 2010 WL 3958787, at *11

(S.D.N.Y. Sept. 27, 2010) (concluding that the utterance of "three offensive remarks about [ ]

national origin" in a one month period was not sufficient to support a hostile work environment

claim); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) ("Incidents that are few in number and that occur over a short period of time may fail to demonstrate a hostile work environment.").  Simply stated, these alleged comments lack both the pervasiveness and severity to plausibly suggest that Plaintiff Frank was subjected to an objectively hostile work environment.

For all of these reasons, the Court finds that Plaintiffs' Complaint fails to allege facts plausibly suggesting that both Plaintiff Barton and Plaintiff Frank were subjected to a hostile work environment in violation of Title VII.

The Court further finds that the above-described defects in Plaintiffs' Complaint are not substantive in nature, such that better pleading could potentially cure them.  For this reason, the Court finds that Plaintiffs' Title VII disparate treatment claims against Defendant County are dismissed without prejudice.

### 2.      Claims Against Individual Defendants

Under Title VII, it is unlawful for an employer to "fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Liability under Title VII is limited to employers, *not individuals*.  *Reynolds v. Barrett*, 685 F.3d 193, 2020 (2d Cir. 2012); *see also Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (stating "that the remedial provisions of Title VII . . . do not provide for individual liability").

In this case, Plaintiffs Barton and Frank have sued Defendants York and Maday in both their individual and official capacities.  However, Title VII does not impose individual personal

24

liability.  *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 253 (E.D.N.Y. 2015); *see also Mandell v. Cty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) ("[U]nder Title VII individual supervisors are not subject to [personal] liability.").  Additionally, a plaintiff cannot seek to impose Title VII liability on an individual acting in his or her official capacity.  *See Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 410 (E.D.N.Y. 2010) (collecting cases) ("Although the Second Circuit has not yet explicitly decided the issue, 'many recent decisions in this Circuit have rejected Title VII official capacity claims.'") (quoting *Martin v. State Univ. of N.Y.*, 704 F. Supp. 2d 202, 235-36 [E.D.N.Y. 2010]).  In the alternative, should Plaintiffs' official capacity claims be permitted, the Court would nevertheless dismiss such claims because they are duplicative of Plaintiffs' Title VII claims brought against Defendant County itself.  *Emmons*, 715 F. Supp. 2d at 410-11.  Because Plaintiffs cannot successfully claim that Defendants York and Maday violated Title VII in either their individual or official capacities, Plaintiffs' Title VII hostile work environment claims against Defendants York and Maday must be dismissed.

Even when viewed in the light most favorable to Plaintiffs, Plaintiffs' Complaint against Defendants York and Maday relate solely to their status as county employees.  (*See generally* Dkt. No. 1.)  Both Defendants York and Maday were employees of the County during the relevant time period.  Although Plaintiffs accuse Defendants York and Maday of unlawfully discriminating and retaliating against them, Plaintiffs' Complaint fails to plead facts plausibly suggesting that either individual Defendant acted outside the scope of his official duties (and in his own personal interest) when interacting with either Plaintiff.  Instead, Plaintiffs' Complaint alleges facts plausibly suggesting that each action taken by Defendants York and Maday was taken within the scope of their employment.  (*Id.* at ¶¶ 36-39, 53, 61-64.)  Thus, Plaintiffs'

Complaint is devoid of any plausible allegations against Defendants York and Maday as individuals.

Furthermore, the Court finds that the above-described defects in Plaintiffs' thorough and detailed Complaint are substantive in nature, such that better pleading would not cure them. For this reason, Plaintiffs' Title VII hostile work environment claims against Defendants York and Maday must be dismissed with prejudice.

### D.   Whether Plaintiffs' Title VII Disparate Treatment Claims Should Be Dismissed for Failure to State a Claim

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law. (Dkt. No 4-4; Dkt. No. 10.) To those reasons, the Court adds the following analysis, which is intended to supplement, and not supplant, Defendants' reasoning.

"To establish an inference of discrimination, a plaintiff must allege that 'she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'" *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 [2d Cir. 2000]). The judgment rests on "whether the plaintiff and those [she] maintains were similarly situated were subject to the same workplace standards." *Brown*, 756 F.3d at 230 (quoting *Graham*, 230 F.3d at 40). "The plaintiff's and comparator's circumstances must bear a 'reasonably close resemblance,' but need not be 'identical.'" *Id.* (quoting *Graham*, 230 F.3d at 40). Absent direct evidence of discrimination, "a plaintiff must plausibly allege facts that *would support a finding* that she suffered an adverse employment action and 'has at least minimal support for the proposition that the employer was motivated by discriminatory intent,'" to survive a motion to dismiss a Title VII claim. *Thomson v. Odyssey*

*House*, 14-CV-3857, 2015 WL 5561209, at *14 (E.D.N.Y. Sept. 21, 2015) (emphasis in original) (quoting *Littlejohn*, 795 F.3d at 311).

### 1.      Claims Against Defendant County

Plaintiffs argue that the comparison of experiences between Plaintiff Barton and Plaintiff Frank plausibly suggests Defendant County's discrimination against pregnant women.  However, Plaintiffs' Complaint fails to allege, let alone discuss, "the more favorable treatment of employees not in the protected group."  *Littlejohn*, 795 F.3d at 312.  Plaintiffs' comparison amongst themselves is insufficient because both Plaintiff Barton and Plaintiff Frank are members of the protected group at issue (pregnant women).  Plaintiffs' Complaint fails to mention, compare, and/or describe what, if any, reasonable accommodations were offered to other corrections officers outside of the protected group (pregnant women).  (*See generally* Dkt. No. 1.)  For example, Plaintiffs' Complaint fails to mention if Defendant County offered reasonable accommodations to injured or temporarily disabled corrections officers (light duty assignments, limited hours, limited assignments, etc.).  (*See generally id.*)  Thus, neither Plaintiff Barton nor Frank have pled facts plausibly suggesting disparate treatment as compared to other non-pregnant corrections officers throughout their Complaint.[6]

---

[6]      The Court notes that Plaintiffs, through their opposition to Defendants' motion to dismiss, raise, for the first time, a disparate impact claim.  (Dkt. No. 5, at 12-13.)  However, Plaintiffs conflate the disparate treatment and disparate impact legal theories.  "A plaintiff can assert a Title VII claim under two different legal theories-disparate impact or disparate treatment.  *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 328 n. 16 (S.D.N.Y. 2015) (citing *Kelber v. Forest Elec. Corp.*, 799 F. Supp. 326, 332 [S.D.N.Y. 1992]).  Because both Plaintiffs' Complaint and opposition memorandum of law identify and advance claims for disparate treatment compared to similarly situated employees, the Court will not address Plaintiff's disparate impact theory.  *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (explaining that a party cannot advance a claim for the first time through statements made in motion papers).

The Court also finds that the above-described defects in Plaintiffs' Complaint are not substantive in nature, such that better pleading could cure them.  For this reason, the Court finds that Plaintiffs' Title VII disparate treatment claims against Defendant County must be dismissed without prejudice.

For all of these reasons, the Court finds that Plaintiffs' disparate treatment claims against Defendant County are dismissed for failure to state a claim, without prejudice.

### 2.        Claims Against Individual Defendants

Plaintiffs have sued Defendants York and Maday in both their individual and official capacities.  As discussed above in Part III.C.2., of this Decision and Order, Title VII does not impose liability on individuals in either their official or individual capacities.  *See Mandell*, 316 F.3d at 377 ("[U]nder Title VII individual supervisors are not subject to liability[.]"); *Emmons*, 715 F. Supp. 2d at 410-11 (finding that many district courts within the Second Circuit have rejected Title VII official capacity claims).  Therefore, Plaintiffs have failed to allege facts plausibly suggesting that Defendants York and Maday violated Title VII in either their individual or official capacities.[7]

Additionally, the Court finds that the above-described defects in Plaintiffs' thorough and detailed Complaint are substantive in nature, such that better pleading would not cure them.  For this reason, the Court finds that Plaintiffs' Title VII hostile work environment claims against Defendants York and Maday must be dismissed with prejudice.

For all of these reasons, the Court finds that Plaintiffs' Title VII disparate treatment

---

[7]        As discussed in Part III.B.2 of this Decision and Order, Plaintiffs' NYSHRL disparate treatment claims are dismissed without prejudice for lack of subject-matter jurisdiction.

28

claims against Defendants York and Maday are dismissed for failure to state a claim, with prejudice.

### E.   Whether Plaintiffs' Title VII Pregnancy Discrimination Claims Should Be Dismissed for Failure to State a Claim

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated below.

Congress amended Title VII through the Pregnancy Discrimination Act ("PDA") to reflect its determination that "discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex." *Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 684 (1983).  "[W]omen affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work."  42 U.S.C. § 2000e(k).  "Like other Title VII discrimination claims, pregnancy discrimination may be proven under a disparate treatment or disparate impact theory of liability."  *Legg v. Ulster Cty.*, 820 F.3d 67, 72 (2d Cir. 2016) (citing *Young*, 575 U.S. at 212-13).

### 1.   Claims Against Defendant County

Defendant County argues that both Plaintiff Barton's and Plaintiff Frank's Title VII pregnancy discrimination claims should be dismissed because neither Plaintiff can show that they were treated any differently than other non-pregnant correctional officers.  (Dkt. No. 4-4, at 20-23.)  However, only Plaintiff Barton's pregnancy discrimination claim centers on Defendant County's alleged failure to accommodate.  (Dkt. No. 1, at ¶¶ 32-39, 102-07.)  Plaintiff Frank's pregnancy discrimination claim originates from her alleged constructive discharge, which was

allegedly due to her pregnancy.  (Dkt. No. 1 at ¶¶ 61-65, 102-07; Dkt. No. 5, at 8-9.)

As previously discussed in Part III.D.1. of this Decision and Order, Plaintiff Barton does not to mention, compare, and/or describe what, if any, reasonable accommodations were offered to other corrections officers outside of the protected group (pregnant women).  To properly allege the denial of an accommodation under the PDA, the plaintiff must plead facts that plausibly suggest the following: (1) she is a member of a protected class, (2) she sought accommodation, (3) the employer did not accommodate her, and (4) the employer accommodated others "similar in their ability or inability to work."  *Young*, 575 U.S. at 229. Although Plaintiff Barton has pled facts plausibly suggesting that she is a member of a protected class, that she sought accommodation, and that Defendant County did not accommodate her, she has not pled any facts plausibly suggesting how Defendant County reasonably accommodated other corrections officers "similar in their ability or inability to work" to Plaintiff Barton.  (*See generally* Dkt. No. 1.)  Accordingly, Plaintiff Barton has failed to allege facts plausibly suggesting that that Defendant County's failure to accommodate was a Title VII violation.

With respect to Plaintiff Frank, the Court finds that she has not pled facts plausibly suggesting she was discharged because of her pregnancy status.  To show that she was discriminatorily discharged, Plaintiff Frank must plead facts plausibly suggesting the following: "(1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was discharged; and (4) . . . the discharged occurred in circumstances giving rise to an inference of unlawful discrimination."  *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019).  Although Plaintiff Frank has pled facts plausibly suggesting that she is a member of

a protected class, that she satisfactorily preformed her required duties,[8] and that she was

discharged, she failed to plead facts plausibly suggesting that her discharge occurred in

circumstances giving rise to an inference of unlawful discrimination.

In *Lenzi*, the plaintiff informed one supervisor that she was pregnant on May 31, 2013,

and another supervisor on June 10, 2013. *Lenzi*, 944 F.3d at 108. Less than a month after telling

one supervisor and two weeks after informing the other, the plaintiff was placed on

administrative leave and subsequently fired. *Id.* The Second Circuit found that the temporal

proximity between the time she disclosed her pregnancy and her termination established an

inference of unlawful discrimination. *Id.*

Here, Plaintiff Frank informed her supervisors that she was pregnant on or about April

2018. (Dkt. No. 1, at ⁋ 53.) It was not until July 18, 2018, that Plaintiff Frank was allegedly

forced to resign due to "unsubstantiated allegations of her failure to perform [] essential

functions." (*Id.* at ⁋⁋ 61-65.) Although Plaintiff Frank requested and received a reasonable

accommodation of "no further overtime" because of her pregnancy (*id.* at ⁋⁋ 55, 58), the

temporal proximity between the time she disclosed her pregnancy and her termination does not

establish an inference of unlawful discrimination. "Courts have 'consistently held that the

passage of two to three months between the protected activity and the adverse employment

action does not allow for an inference of causation.'" *Choi v. Ferrellgas, Inc.*, 17-CV-3518,

2020 WL 122976, at *8 (E.D.N.Y. Jan. 10, 2010) (quoting *Murray v. Visiting Nurse Servs. of

N.Y.*, 528 F. Supp. 2d 257, 275 [S.D.N.Y. 2015]). "Courts generally do not extend a causal

---

[8]     As previously discussed in Part III.A. of this Decision and Order, the Court is not relying
on Defendants' additional facts alleged within their memorandum of law. (Dkt. No. 4-4.)

relationship to these longer timespans because they are 'simply too attenuated to establish that the alleged adverse employment actions were the product of a retaliatory motive.'" *Choi*, 2020 WL 122976, at *8 (quoting *Brown v. City of New York*, 622 F. App'x 19, 20 [2d Cir. 2015]). Where, as here, Plaintiff Frank bases her Title VII pregnancy discrimination claims on temporal proximity alone, the approximate four-month timeline is not sufficient to give rise to the plausible inference that Plaintiff Frank was discriminated against because of her pregnancy.

Additionally, the Court finds that the above-described defects in Plaintiffs' Complaint are not substantive in nature, such that better pleading could potentially cure them. For this reason, the Court finds that Plaintiffs' Title VII pregnancy discrimination claims against Defendant County must be dismissed without prejudice.

For all of these reasons, Plaintiffs' Title VII pregnancy discrimination claims against Defendant County are dismissed for failure to state a claim, without prejudice.

### 2.    Claims Against Individual Defendants

Plaintiffs have also sued Defendants York and Maday in both their individual and official capacities. As discussed above in Part III.C.2., of this Decision and Order, Title VII does not impose liability on individuals in either their official or individual capacities. *See Mandell*, 316 F.3d at 377 ("under Title VII individual supervisors are not subject to liability"); *Emmons*, 715 F. Supp. 2d at 410-11 (finding that many district courts within the Second Circuit have rejected Title VII official capacity claims). Because Plaintiffs' Complaint failed to plead facts plausibly suggesting that either Defendant York or Maday discriminated against Plaintiffs because of their pregnancy, Plaintiffs have failed to allege facts plausibly suggesting that Defendants York and

Maday violated Title VII in either their individual or official capacities.[9]

Moreover, the Court finds that the above-described defects in Plaintiffs' thorough and detailed Complaint are substantive in nature, such that better pleading would not cure them. For this reason, the Court finds that Plaintiffs' Title VII pregnancy discrimination claims against Defendants York and Maday must be dismissed with prejudice.

For all of these reasons, the Court finds that Plaintiffs' Title VII pregnancy discrimination claims against Defendants York and Maday must be dismissed for failure to state a claim, with prejudice.

## F.     Whether Plaintiffs' Title VII Retaliation Claims Should Be Dismissed for Failure to State a Claim

After carefully considering the matter, the Court answers this question in the affirmative with respect to Plaintiff Barton for the reasons stated in Defendants' memoranda of law (Dkt. No 4-4; Dkt. No. 10), and in the negative with respect to Plaintiff Frank for the reasons stated in Plaintiffs' opposition memorandum of law (Dkt. No. 5 at 14). To those reasons, the Court adds the following analysis, which is intended to supplement, not supplant, the parties' reasoning.

"[E]xhaustion is 'an essential element of Title VII's statutory scheme.'" *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (quoting *Francis v. City of New York*, 235 F.3d 763, 768 [2d Cir. 2000]). "[T]he failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court[.]" *Francis*, 235 F.3d at 768. The "burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense." *Hardaway*, 879 F.3d at 491. "[C]laims that were not asserted before the

---

[9]     As discussed in Part III.B.2 of this Decision and Order, Plaintiffs' NYSHRL pregnancy claims are dismissed without prejudice for lack of subject-matter jurisdiction.

[Equal Employment Opportunity Commission ("EEOC")] may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the [EEOC]." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (quoting *Legani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 [2d Cir. 2001]).  "A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made."  *Fitzgerald v. Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001).  "In determining whether claims are reasonably related, the focus should be 'on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'"  *Deravin*, 335 F.3d at 201 (quoting *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 637 [9th Cir. 2002]).

"To establish a prima facie case of retaliation, [the plaintiff] must show (1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action."  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (citing *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 [2d Cir. 2006]).  "An 'adverse employment action' is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003).  "[T]o constitute an adverse employment action, an employer's act must rise to the threshold where it 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Corbett v. Napolitano*, 897 F. Supp. 2d 96, 112 (E.D.N.Y. 2012) (quoting *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174 [2011]).

To show causation, "a plaintiff must plausibly plead a connection between the act and

[her] engagement in protected activity." *Vega*, 801 F.3d at 90.  Title VII retaliation claims require the plaintiff to allege facts plausibly suggesting that the retaliation was the but-for cause of that challenged employment action.  *Id.*  "A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 [2d Cir. 2000]).  "The Second Circuit 'has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation.'" *Rice v. Smithtown Volkswagen*, 321 F. Supp. 3d 375, 391 (E.D.N.Y. 2018) (quoting *Gorzynski*, 596 F.3d at 110).  "[L]ike many aspects of causation in the Title VII context, the inquiry is dependent on the relevant circumstances of the case." *Rice*, 321 F. Supp. 3d at 391.

### 1.      Claims Against Defendant County

Plaintiffs argue that, although the box for the EEOC cover sheet was not checked, their essential allegations alone satisfy Title VII's administrative exhaustion requirements, or in the alternative, are reasonably related to Plaintiffs' other sex and pregnancy discrimination claims. (Dkt. No. 5, at 14-16.)  The Court first analyzes Plaintiff Barton's retaliation claims before turning to Plaintiff Frank's retaliation claims.

As Plaintiff Barton concedes, she did not check the box on her EEOC cover sheet.  (Dkt. No. 5, at 14; Dkt. No. 4-2, at 4.)  Plaintiff Barton's affidavit in support of her EEOC charge does not mention the word "retaliation," nor does it plausibly suggest that she was alleging a

retaliation claim.  (Dkt. No. 4-2, at 5-6.)  Moreover, the EEOC's notice of charge of discrimination sent to Defendant York specified that the circumstances of alleged discrimination included only sex and disability discrimination.  (Dkt. No. 4-2, at 3.)  Plaintiff Barton's factual allegations in the EEOC charge do not adequately describe and/or mention Defendants engaging in retaliatory conduct.  (Dkt. No. 4-2, at 5-6.)  Instead, Plaintiff Barton's grievances focus primarily on her requested accommodations, Defendants' failure to provide them, and the subsequent ramifications of the impasse.  Therefore, the Court finds that Defendant County has met its burden, and that Plaintiff Barton has failed to exhaust her administrative remedies prior to filing a Title VII retaliation claim.

The Court also finds that Plaintiff Barton has also not pled facts plausibly suggesting that Defendant County retaliated against her by denying her request for reasonable accommodations.  Adverse employment actions must be taken with a retaliatory animus.  *Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 365 (S.D.N.Y. 2016).  Here, Plaintiff Barton has failed to plead any facts plausibly suggesting that Defendant County, or its agents, denied her request for reasonable accommodations with a retaliatory animus.  (*See generally* Dkt. No. 1, at ¶¶ 27-48.)

Even if Defendant County's failure to accommodate constituted an adverse employment action, Plaintiff Barton's retaliation claim still fails.  "While courts may consider the underlying conduct of an alleged failure to accommodate, a failure to accommodate, by itself, is not sufficient for purposes of establishing an adverse employment action."  *Sosa v. N.Y.C. Dep't of Ed.*, 368 F. Supp. 3d 489, 496 (E.D.N.Y. 2019) (quoting *Sherman v. Cty. of Suffolk*, 71 F. Supp. 3d 332, 345 [E.D.N.Y. 2014]).  In this case, Plaintiff Barton's retaliation claim rests entirely on Defendant County's alleged failure to accommodate.  (*See generally* Dkt. No. 1, at ¶¶ 27-48.)

Because Plaintiff Barton failed to allege any additional underlying conduct in support of her retaliation claim, she simply cannot meet her prima facie burden.

Turning to Plaintiff Frank's retaliation claim, the Court finds that Defendant County has not met its burden, and that Plaintiff Frank exhausted her administrative remedies with respect to her Title VII retaliation claim.  Although she did not check the retaliation box on her EEOC cover sheet, Plaintiff Frank's affidavit mentions the word "retaliation" in two separate paragraphs.  (Dkt. No. 4-3, at 7.)  Plaintiff Frank's factual allegations in the EEOC charge focus on her "bullying incidents" involving fellow corrections officers, her reporting of these incidents, and her constructive discharge, which was allegedly in retaliation for her reports of pregnancy discrimination and harassment.  (Dkt. No. 4-3, at 6-8.)  Additionally, the EEOC's notice of charge of discrimination sent to Defendant York specifically stated that the circumstances surrounding Plaintiff Frank's discrimination claims included sex discrimination as well as retaliation.  (Dkt. No. 4-3, at 3.)  Based on these circumstances, the Court finds that Plaintiff Frank's retaliation claim is reasonably related to her originally filed EEOC claims and that she has exhausted her administrative remedies.

The Court also finds that Plaintiff Frank has met her prima facie burden with respect to her retaliation claim to survive Defendants' motion to dismiss.  "To show protected activity in having opposed discrimination, a plaintiff need not allege that she opposed conduct that actually violated the law, but only that she 'possessed a good faith, reasonable belief that the underlying employment practice was unlawful under the statute.'"  *Thompson v. Odyssey House*, 14-CV-3857, 2015 WL 5561209, at *20 (quoting *Summa v. Hofstra Univ.*, 708 F.3d 115, 126 [2d Cir. 2013]).  Here, Plaintiff Frank has alleged facts plausibly suggesting that she subjectively

believed her co-worker's remarks were unlawful under the statute, as shown through her multiple complaints with senior corrections officers.  Specifically, in July 2018, Plaintiff Frank made at least two separate complaints to senior corrections officers, where she reported separate incidents of alleged pregnancy discrimination.  (Dkt. No. 1, at ⁋ 59.)  In the same month, Plaintiff Frank also submitted a written report to senior officers detailing the alleged discrimination.  (*Id*. at ⁋ 60.)  On July 18, 2018, less than three weeks after informing senior corrections officers about the alleged pregnancy discrimination, Plaintiff Frank was constructively discharged.  (*Id*. at ⁋⁋ 61-67.)  "When alleged retaliation occurs in close temporal proximity to an employee's exercising of federally protected employment rights, courts have inferred a retaliatory intent in satisfaction of that pleading requirement."  *Fernandez*, 159 F. Supp. 3d at 365.  Given the close proximity and nature of the events that led to Plaintiff Frank's constructive discharge, and when viewed in the light most favorable to Plaintiff Frank, the Court finds that she has alleged facts plausibly suggesting that she was retaliated against for reporting conduct to senior corrections officers.

With respect to Plaintiff Barton, the Court finds that the above-described defects in Plaintiffs' thorough and detailed Complaint are substantive in nature, such that better pleading would not cure them.  For this reason, the Court finds that Plaintiff Barton's Title VII retaliation claim against Defendant County must be dismissed with prejudice.

For all of these reasons, Plaintiff Barton's Title VII retaliation claim against Defendant County is dismissed with prejudice, while Plaintiff Frank's Title VII retaliation claim survives.

### 2.    Claims Against Individual Defendants

In this case, Plaintiffs sued Defendants York and Maday in both their individual and official capacities.  As discussed above in Part III.C.2., of this Decision and Order, Title VII does

not impose liability on individuals in either their official or individual capacities.  *See Mandell*, 316 F.3d at 377 ("under Title VII individual supervisors are not subject to liability"); *Emmons*, 715 F. Supp. 2d at 410-11 (finding that many district courts within the Second Circuit have rejected Title VII official capacity claims).  Thus, Plaintiffs have failed to plead facts plausibly suggesting that Defendants York and Maday violated Title VII in either their individual or official capacities. [10]

Moreover, the Court finds that the above-described defects in Plaintiffs' thorough and detailed Complaint are substantive in nature, such that better pleading would not cure them.  For this reason, the Court finds that Plaintiffs' Title VII retaliation claims against Defendants York and Maday must be dismissed with prejudice.

For all of these reasons, Plaintiffs' Title VII retaliation claims against Defendants York and Maday are dismissed for failure to state a claim, with prejudice.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 4) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that Plaintiff Barton's Title VII claims against Defendant County (Dkt. No. 1) are **DISMISSED**; and it is further

**ORDERED** that Plaintiff Frank's Title VII hostile work environment, disparate treatment, and pregnancy discrimination claims against Defendant County are **DISMISSED**; and it is further

---

[10]      As discussed in Part III.B.2 of this Decision and Order, Plaintiffs' NYSHRL retaliation claims are dismissed without prejudice for lack of subject-matter jurisdiction.

**ORDERED** that Plaintiff Frank's Title VII retaliation claim against Defendant County **SURVIVES** Defendants' motion; and it is further

**ORDERED** that Plaintiffs' Title VII claims against Defendant York, and Defendant Maday (Dkt. No. 1) are **DISMISSED**; and it is further

**ORDERED** that Plaintiffs' NYSHRL claims against Defendant County, Defendant York, and Defendant Maday (Dkt. No. 1) are **DISMISSED**; and it is further

**ORDERED** that the dismissals of Plaintiffs' Title VII claims against Defendants York and Maday are **with prejudice**, the dismissal of Plaintiff Barton's Title VII retaliation claim against Defendant County is **with prejudice**, the remaining dismissals of Plaintiffs' Title VII claims against Defendant County are **without prejudice**, and the dismissals of Plaintiffs' NYSHRL claims against all Defendants are **without prejudice**.

Dated: August 7, 2020
　　　　Syracuse, New York

Glenn T. Suddaby
Chief U.S. District Judge

40