UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JULIA BARTON, a/k/a Julia Benson; and
McKENNA S. FRANK, a/k/a McKenna S. Brodie,

                    Plaintiffs,

v.                                                                          1:19-CV-1061
                                                                            (GTS/DJS)
WARREN COUNTY,

                    Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

OFFICE OF RONALD J. KIM                    RONALD J. KIM, ESQ.
 Counsel for Plaintiffs
P.O. Box 318
Saratoga Springs, NY 12866

JOHNSON & LAWS, LLC                        GREGG T. JOHNSON, ESQ.
 Counsel for Defendant                          LORAINE C. JELINEK, ESQ.
648 Plank Road, Suite 204                        APRIL J. LAWS, ESQ.
Clifton Park, NY 12020

GLENN T. SUDDABY, United States District Judge

<u>**DECISION and ORDER**</u>

      Currently before the Court, in this employment civil rights action filed by Julia Barton

("Plaintiff Barton") and McKenna S. Frank ("Plaintiff Frank") against Warren County

("Defendant"), is Defendant's motion for summary judgment on Plaintiffs' two remaining claims

in their Amended Complaint.  (Dkt. No. 61.)  For the reasons set forth below, Defendant's

motion is denied.

**I.  RELEVANT BACKGROUND**

      **A.  Plaintiffs' Amended Complaint**

Generally, liberally construed, Plaintiffs' Amended Complaint alleges that, between April of 2018 and June of 2019 at the Warren County Correctional Facility ("WCCF"), Defendant discriminated against Plaintiff Barton while she served as a Correction Sergeant and retaliated against Plaintiff Frank while she served as a Correction Officer after they each informed Defendant that they were pregnant. (*See generally* Dkt. No. 34.) Based on these factual allegations, Plaintiffs' Amended Complaint asserts the following claims against Defendant: (1) Plaintiff Barton's claim of sexual discrimination through disparate treatment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), which includes the Pregnancy Discrimination Act of 1978 ("PDA"); and (2) Plaintiff Frank's claim of retaliation under Title VII and the PDA. (*Id*.) Familiarity with the factual allegations supporting these claims in Plaintiffs' Amended Complaint is assumed in this Decision and Order, which is intended primarily for the review of the parties. (*Id*.)

**B.  Statement of Undisputed Material Facts**

Unless otherwise noted, each of the following numbered facts has been, (1) asserted, and established through a specific record citation, by Defendant in its Statement of Material Facts, (2) expressly admitted, or denied without supporting specific record citations, by Plaintiffs in their response thereto, and (3) found by the Court to be material to Defendant's motion. (*Compare* Dkt. No. 61, Attach. 21 *with* Dkt. No. 66, Attach. 1.)

<u>Facts Material to Claim of Plaintiff Barton</u>

1.  On August 5, 2014, Plaintiff Barton was hired by the Warren County Sheriff's Office ("WCSO") as a probationary Correction Officer.

2.  Upon Plaintiff Barton being hired by the WCSO, she had a mandatory one (1) year

probationary period.

  3.  All newly hired Correction Officers at the Warren County Correctional Facility ("WCCF") are required to successfully complete a mandatory one (1) year probationary period.

  4.  If and when probationary Correction Officers complete their mandatory one (1) year probationary period, they will become a permanent Correction Officer at the WCCF.

  5.  Plaintiff Barton has testified that she has observed "approximately a hundred" physical altercations that took place between inmates and WCCF staff since she has been employed by the WCSO.

  6.  Plaintiff Barton has testified that she has had to respond to "approximately fifty" physical altercations involving inmates at the WCCF.

  7.  Plaintiff Barton has testified that she has had to employ "use of force" during those "approximately fifty" physical altercations that she responded to involving inmates at the WCCF.

  8.  Plaintiff Barton has testified that she has been physically injured while responding to certain physical altercations involving inmates at the WCCF.[1]

  9.  On January 17, 2017, the County promoted Plaintiff Barton to a Correction Sergeant position.

  10.  Upon her promotion to Correction Sergeant, Plaintiff Barton received a salary increase.

  11.  WCCF Correction Sergeants are responsible for, among other duties, the care, custody, and control of the inmates.

---

[1]     Plaintiffs have clarified that this injury occurred *after* Plaintiff Barton's pregnancy.

12. The County is mandated to follow the requirements set forth by the New York State Commission of Correction ("NYSCC").

13. WCSO Correction Sergeants work within the secured perimeter of the WCCF.

14. In December 2013, the NYSCC issued an updated Position and Staffing Analysis Report ("Staffing Analysis").[2]

15. The NYSCC's updated Staffing Analysis required that there be two (2) full-duty Officers working in the WCCF's Central Control Room ("CCR").

16. Upon Plaintiff Barton informing WCCF Lieutenant Wayne Farmer ("Lieutenant Farmer") that she was pregnant, Lieutenant Farmer congratulated her.

17. On October 8, 2018, Plaintiff Barton provided Lieutenant Farmer with a doctor's note, dated October 1, 2018, listing several restrictions that she was requesting due to her pregnancy.

18. On October 9, 2018, Plaintiff Barton met with WCCF Captain Albert Maday ("Captain Maday") to discuss her doctor's note of October 1, 2018.

19. Plaintiff Barton testified that her doctor's note of October 1, 2018, was a "generic note" that her doctor had provided her.

20. During their meeting of October 9, 2018, Captain Maday informed Plaintiff Barton that the WCCF no longer offered "light duty" positions.[3]

21. The County approved Plaintiff Barton's use of sick time.

---

[2]   Plaintiffs have not responded to this assertion. This lack of response is taken by this Court as an admission under Local Rule 56.1(b) of the District's Local Rules of Practice.

[3]   Plaintiffs have admitted that this statement was made but denied that the statement is in fact true.

22.  After she had used her sick time, Plaintiff Barton received New York State disability

benefits.

23.  The County did not contest Plaintiff Barton's application for New York State disability

benefits.

24.  None of Plaintiff Barton's supervisors (i.e., Captain Maday, Lieutenant Farmer, or

Lieutenant Daniel Clifford) at the WCCF ever demanded that Plaintiff Barton apply for

New York State disability benefits.

25.  Plaintiff Barton continued to collect New York State disability benefits after she returned

to work at Warren County in June 2019.

26.  Plaintiff Barton did not file any internal grievances with the WCCF regarding the claims

alleged in the above-captioned federal action.[4]

27.  Plaintiff Barton plans to remain employed by the WCCF.

<u>Facts Material to Claim of Plaintiff Frank</u>

28.  Plaintiff Barton has testified that Plaintiff Frank was a probationary Correction Officer.

29.  Plaintiff Barton has testified that Plaintiff Frank did not successfully complete her

 (Frank's) mandatory one (1) year probationary period.

30.  Plaintiff Frank was hired by the WCSO on August 28, 2017, as a probationary Correction

Officer.

31.  When Plaintiff Frank was hired by the WCSO, she had a one (1) year probationary

period.

32.  When Plaintiff Frank was hired by the WCSO, she was required to complete her one (1)

---

[4]      After admitting the above-stated fact, Plaintiffs added that "Barton did testify that she
contacted her union representative."  (Dkt. No. 66, Attach. 1, at ¶ 38 [accurately citing page 117
of Barton's deposition testimony].)

year probationary period.

33.  At all relevant times, Plaintiff Frank was a probationary employee at the WCCF.

34.  On July 5, 2018, Plaintiff Frank requested not to work any overtime at the WCCF. That

request was granted by Defendant.

35.  During their meeting on July 11, 2018, Plaintiff Frank was aware that Sheriff James

LaFarr (a Corrections Major at the time) was recording his conversation with Plaintiff

Frank.

36. Plaintiff Frank received a counseling memorandum from the County regarding Plaintiff

Frank falling asleep during her assigned shift on January 28, 2018.

37.  Plaintiff Frank received a counseling memorandum from the County regarding Plaintiff

Frank falling asleep during her assigned shift at the WCCF on February 3, 2018.

38.  Plaintiff Frank testified that she "dozed off" during her assigned shift at the WCCF on

February 3, 2018.

39.  On July 18, 2018, Plaintiff Frank had a meeting with her supervisors at WCCF.

40.  The County did not contest Plaintiff Frank's application to receive New York State

unemployment benefits.

**C.  Parties' Briefings on Defendant's Motion**

**1.  Defendant's Memorandum of Law**

Generally, in Defendant's motion for summary judgment, Defendant asserts  the

following two arguments: (1) Defendant is entitled to judgment as a matter of law on Plaintiff

Barton's Title VII disparate treatment claim, because (a) Plaintiff Barton cannot satisfy her prima

facie burden under the *McDonnell Douglas* burden-shifting framework (i.e., proving that [1] she

was competently able to perform her full job duties as a WCCF Correction Sergeant in a satisfactory manner, [2] she suffered an actionable adverse employment action from the County; and [3] the County intended to discriminate against her on the basis of her pregnancy), and (b) in any event, Defendant has produced undisputable evidence demonstrating a legitimate, non-discriminatory reason for not reassigning Plaintiff Barton to a "light duty" position when she requested one in October 2018; and (2) Defendant is entitled to judgment as a matter of law on Plaintiff Frank's Title VII retaliation claim, because (a) as a threshold matter, the allegations of temporal proximity made in Plaintiffs' Amended Complaint regarding the occurrence of Plaintiff Frank's protected conduct (which Defendant states it first learned of on June 8, 2018) and its purported adverse employment action against her (in July 18, 2018) are demonstrably false, (b) moreover, Plaintiff Frank cannot satisfy her initial burden under the *McDonnell Douglas* burden-shifting framework (i.e., proving that [1] she engaged in a protected activity, [2] her employer was aware of that protected activity, [3] her employer took an adverse employment action against her, and [4] there is a causal connection between the employer's adverse employment action and her protected activity), and (c) in any event, Defendant has produced undisputable evidence demonstrating a legitimate, nonretaliatory reason for not offering Plaintiff Frank a permanent position as a Correction Officer. (Dkt. No. 61, Attach. 22.)

### 2.  Plaintiffs' Opposition Memorandum of Law

Generally, in opposition to Defendant's motion, Plaintiffs asserts the following two arguments: (1) Defendant is not entitled to judgment as a matter of law on Plaintiff Barton's Title VII disparate treatment claim, because (a) Plaintiff Barton has demonstrated a prima facie case of disparate treatment discrimination, and (b) Defendant's justification that it does not offer

"light duty" positions is a pre-text; (2) Defendant is not entitled to judgment as a matter of law on Plaintiff Frank's Title VII retaliation claim, because (a) Plaintiff Frank has demonstrated a prima facie case of retaliation, and (b) the close temporal proximity between Plaintiff Frank's last engagement in protected activity (on July 11, 2018) and her constructive termination (on July 18, 2018) is sufficient to demonstrate a causal connection.  (Dkt. No. 66.)

### 3.  Defendant's Reply Memorandum of Law

Generally, in reply to Plaintiffs' opposition memorandum of law, Defendant asserts three arguments: (1) based upon Plaintiffs' disregard for the Federal Rules of Civil Procedure, the Court's Local Rules of Practice, and the Orders of this Court, the Court should strike the defective filings from the record in this case (including Plaintiffs' Statement of Additional Material Facts, the Affidavit of Julia Barton, the Affidavit of Stephen Frank, and all references to these defective submissions that Plaintiffs attempt to rely upon in their opposition memorandum of law); (2) Plaintiff Barton's disparate treatment claim is meritless, because the WCCF was no longer able to reassign any of its employees to "light duty" positions after those positions had been eliminated by the NYSCC; (3) Plaintiff Frank's retaliation claim is meritless, because it was her consistent unsatisfactory job performance and violations of multiple County policies/procedures (and not her protected activity) that resulted in her not being offered a permanent Correction Officer position.  (Dkt. No. 72, Attach. 6.)

## II.  RELEVANT LEGAL STANDARDS

### A.  Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as

a matter of law." Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[5]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant.  *Id*. at 255.  In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact."  *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a), (c), (e).[6]

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.  Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted

---

[5]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[6]    Among other things, Local Rule 56.1 requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 56.1.

automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1 by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[7]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[8]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested

---

[7]    *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases).

[8]    *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]); *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

therein . . . .”); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.).

### B.  Legal Standard Governing Title VII Disparate Treatment Claims

Title VII prohibits discrimination with respect to the terms, conditions, or privileges of employment due to a person's sex.  42 U.S.C. § 2000e–2(a)(1).  The Pregnancy Discrimination Act added the following to Title VII's definitional section: the terms “because of sex” or “on the basis of sex” include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work.  42 U.S.C. § 2000e(k).  This provision “makes clear that it is discriminatory to treat pregnancy-related conditions less favorably than other medical conditions.”  *Legg v. Ulster Cnty.*, 820 F.3d 67, 73 (2d Cir. 2016); *Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.,* 462 U.S. 669, 670–71 & n. 1, (1983).

Pregnancy discrimination may be proven under a disparate treatment or disparate impact theory.  *Young v. United Parcel Serv., Inc.,* 575 U.S. 206, 213 (2015).  To prove disparate treatment, a plaintiff must show that the defendant's actions were motivated by a discriminatory intent, through either direct evidence of intent or by utilizing the three-part burden-shifting framework.  *Legg,* 820 F.3d at 73; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973).  Alternatively, a plaintiff may proceed on a disparate impact theory by showing that, even if a policy is facially neutral or is not motivated by discriminatory intent, the policy still has a discriminatory effect.  *Ricci v. DeStefano*, 557 U.S. 557, 577–78 (2009).

As with any discrimination claim, plaintiff trying to prove pregnancy discrimination must satisfy her prima facie burden by "showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under Title VII." *Legg,* 820 F.3d at 74; *Young,* 575 U.S., at 210.  This burden is not onerous and requires the plaintiff to show only that (1) she belongs to a protected class, (2) she sought an accommodation, (3) the employer did not accommodate her, and (4) the employer did accommodate others similar in their inability to work. *Legg,* 820 F.3d at 74.

If the plaintiff satisfies her prima facie burden, a presumption of discriminatory intent arises.  The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its action or policy. *Id*.  But "consistent with the Act's basic objective, that reason normally cannot consist simply of a claim that it is more expensive or less convenient to add pregnant women to the category of those ('similar in their ability or inability to work') whom the employer accommodates." *Young*, 575 U.S. at 228.   If the defendant puts forth a legitimate, non-discriminatory justification for denying the accommodation, the presumption of discrimination is removed and the plaintiff must prove that the employer's justification is a pretext for discrimination, by a preponderance of the evidence. *Id*.

Finally, the plaintiff may rebut the defendant's justification through circumstantial proof of discriminatory intent.  In pregnancy discrimination cases, a plaintiff may rebut the employer's justification by presenting "sufficient evidence that the employer's policies impose a significant burden on pregnant workers, and that the employer's legitimate, nondiscriminatory reasons are not sufficiently strong to justify the burden, but rather—when considered alongside the burden

imposed—give rise to an inference of intentional discrimination." *Legg,* 820 F.3d at 74.

### C.  Legal Standard Governing Title VII Retaliation Claims

Title VII also includes an anti-retaliation provision. Under that provision, it is unlawful

for an employer to discriminate against an employee "because he has opposed any practice made

an unlawful employment practice by this subchapter, or because he has made a charge, testified,

assisted, or participated in any manner in an investigation, proceeding, or hearing under this

subchapter." 2 U.S.C. § 2000e–3(a).  Retaliation is unlawful when the retaliatory acts were

"harmful to the point that they could well dissuade a reasonable worker from making or

supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53,

57 (2006).

Similar to disparate treatment claims, retaliation claims are also evaluated under a three-

step burden-shifting analysis. *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir.

2005); *McDonnell Douglas Corp.,* 411 U.S. at 802–05.  First, a plaintiff must satisfy her prima

facie burden of retaliation by showing the following: (1) her participation in a protected activity;

(2) her employer's awareness of her protected activity; (3) the taking of an adverse employment

action by the employer against the plaintiff; and (4) the existence of a causal connection exists

between the protected activity and the adverse employment action. *Jute,* 420 F.3d at 173.  Proof

of causation can be shown either indirectly, by showing that the protected activity was followed

closely in time by an adverse employment action, or directly through evidence of retaliatory

actions directed at the plaintiff by the defendant. *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d

1033, 1039 (2d Cir.1993).  The plaintiff's burden is "*de minimis,*" and "the court's role in

evaluating a summary judgment request is to determine only whether proffered admissible

13

evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive."

*Hicks v. Baines,* 593 F.3d 159, 164 (2d Cir. 2010); *Jute,* 420 F.3d at 173.

Second, if plaintiff satisfies this initial burden, the burden then shifts to the employer to

articulate a legitimate, non-retaliatory reason for the adverse employment action.  *Meagher v.*

*State Univ. Constr. Fund*, 17-CV-0903, 2020 WL 5504011, at *17 (N.D.N.Y. Sept. 11, 2020)

(Suddaby, C.J.).

Third, should the employer meet its burden, the burden then shifts back to the plaintiff to

put forward evidence that the employer's stated reasons for their nonretaliatory actions are

pretextual.  *Trostle v. State of New York*, 13-CV-0709, 2016 WL 1175215, at *11 (N.D.N.Y.

Mar. 24, 2016) (Suddaby, C.J.).  A plaintiff need not disprove the employer's non-retaliatory

reason for the adverse action.  *Cosgrove,* 9 F.3d at 1039.  Title VII "is violated when a retaliatory

motive plays a part in adverse employment actions ... whether or not it was the sole cause."  *Id.*

## III.  ANALYSIS

### A.  Whether the Affidavits of Plaintiff Barton and Stephen Frank Should Be Stricken from the Record

As an initial matter, the Court must address Defendant's request that the Court strike the

two affidavits submitted by Plaintiffs.  After carefully considering this matter, the Court denies

this request for the reasons stated in Plaintiffs' opposition memorandum of law.  *See, supra,* Part

I.C.2. of this Decision and Order.  To those reasons, the Court adds the following analysis.

#### 1.  Whether the Court Should Strike Plaintiff Barton's Affidavit in Opposition to Defendant's Motion for Summary Judgment as Untimely

In its reply memorandum of law, Defendant requested that the Court strike Plaintiff

Barton's affidavit in opposition to Defendant's motion for summary judgment for being

submitted four minutes past the filing deadline.  (Dkt. No. 72, Attach. 6.)  Although the Court understands Defendant's frustration with this lengthy litigation, it is clear from the Court's electronic case filing system that Plaintiffs were logged into that system three minutes before the expiration of the filing deadline (given that Dkt. No. 66 was filed by Plaintiffs at 11:56 PM on 2/21/22) and, for what appears to be technical reasons, were unable to make this document populate the system until eight minutes later.  It is well within the Court's discretion to accept a submission that is only four minutes late, especially where, as here, there little to no articulated prejudice to Defendant.[9]  *Wang v. Omni Hotels Mgmt. Corp.*, 607 F. Supp. 3d 219, 227 (D. Conn. 2022).  Therefore, the motion to strike is denied.

### 2.  Whether the Court Should Strike Stephen Frank's Affidavit as Inadmissible Hearsay

In its reply memorandum of law, Defendant also requests that this Court strike the affidavit of Stephen Frank (Dkt. No. 66, Attach. 3) for being conclusory and not based on personal knowledge.  (Dkt. No. 72, Attach. 6.)  The genuine dispute of material fact created by Mr. Frank's affidavit is whether it is possible to observe B-Pod, Cell #2 from the camera monitors in the CCR. This fact is material as Defendant has claimed that it was through this live feed camera system that Inspector Barboza observed Plaintiff Frank perform an unsatisfactory cell inspection.  More specifically, Mr. Frank swears that "[t]his is impossible since the security cameras don't reach into Cell #2, Pod Band could not have videotaped this area, that Barboza purported to observe McKenna Frank."  (Dkt. No. 66, Attach. 3, at ¶ 8.)  Defendant argues that Mr. Frank, being a low-ranking Correction Officer, could not have sufficient knowledge of the

---

[9]    Although the motion is denied, the Court will caution both parties to file their papers in a manner that allows the electronic filing system enough time to process them prior to the deadline from this point forward.

camera system in the WCCF to personally know if they see into the cell.  (Dkt. No. 72, Attach.

6.)  Mr. Frank, on the other hand, swears that "[d]uring my work as a Corrections Officer I have

become familiar with the operations of the Central Control Room ("CCR")."  (Dkt. No. 67.)

When viewed after all reasonable inferences are drawn in favor of Plaintiffs (the non-moving

party), Mr. Frank's affidavit sufficiently demonstrates his personal knowledge of the fact

asserted for purposes of Fed. R. Civ. P. 56(c)(4) and Fed. R. Evid. 602, based on his experience

as a Correction Officer in the WCCF.[10]

### B. Whether Plaintiffs' Arguments in Their Opposition Memorandum of Law Should Be Precluded for Having Been Impermissibly Raised for the First Time in Response to a Motion for Summary Judgement

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated in Plaintiffs' opposition memorandum of law. *See, supra,* Part I.C.2. of this

Decision and Order.  To those reasons, the Court adds the following analysis.

Defendant argues that Plaintiffs' arguments from his opposition memorandum of law

must be precluded because they "raise new arguments/assertions against the County for the first

time…"  (Dkt. No. 72, Attach. 6, at 8.)  Specifically, Defendant requests that the Court strike the

following two arguments made by Plaintiffs: (1) that the WCCF video surveillance cameras do

not monitor the B-Pod Cell, and (2) that there is currently a pregnant Correction Officers

assigned to a "light duty."  (*Id.*)  In support of its argument, Defendant cites *Comerford v. Vill. of

N. Syracuse,* 18-CV-1143, 2021 WL 950974, at *27 (N.D.N.Y. Mar. 12, 2021) (Sannes, J.)

("Courts have repeatedly held that it is improper to consider claims not asserted in the complaint

---

[10]     The Court notes that, in its reply memorandum of law, Defendant has also requested that
Plaintiffs' Statement of Additional Material Facts be stricken.  (Dkt. No. 72).  As discussed in
the Court's Text Order of March 7, 2023, Defendant has misconstrued Plaintiffs' submission,
and was granted the opportunity to respond to that document.  (Dkt. No. 76.)  Defendant did
respond to that document so the request to strike is moot. (Dkt. No. 78.)

and raised for the first time at the summary judgment stage.") (collecting cases).

Defendant misconstrues *Comerford,* and other related cases, which held merely that it is improper for the court to consider new *claims or allegations* that are not asserted in the complaint but are asserted for the first time in response to a motion for summary judgment. In *Comerford,* the plaintiff attempted to assert a new claim of retaliation (which she had not asserted in her complaint) in response to the defendants' motion for summary judgment. Here, in opposing Defendant's motion, Plaintiffs assert new *arguments* based on facts learned during discovery. Simply stated, Defendant interchanges the concepts of claims and arguments. Generally, of course, non-movants are free to assert new arguments in response or opposition to a motion for summary judgment, as long the arguments are relevant and there is record evidence to support those arguments.

### C. Whether Plaintiff Barton's Testimony Regarding Brittney Kolomiets, Courtney Howse, Charlene Wells, Matthew Hubbard, and Gregory Riley Should Be Precluded Under Fed. R. Civ. P. 56(c)(2) as Inadmissible Hearsay Under Fed. R. Evid. 801 and 802

After carefully considering this matter, the Court answers this question in the negative for the reasons stated in Plaintiffs' opposition memorandum of law. *See, supra,* Part I.C.2. of this Decision and Order. To those reasons, the Court adds the following analysis.[11]

Defendant argues that Plaintiff Barton's testimony regarding the aforementioned individuals is inadmissible hearsay pursuant to Fed. R. Evid. 801 and 802. (Dkt. No. 72, Attach. 6.) A party's testimony must be based on actual personal knowledge, not speculation, conclusory allegations, information and belief, or hearsay. Fed. R. Civ. P. 56(c)(4); Fed. R. Evid. 602, 701(a); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988); *Sledge v.*

---

[11]    On March 7, 2023, the Court invited (by Text Order) the parties to supplement their initial submissions on this issue.  Both parties submitted additional fillings.  (Dkt. Nos. 83, 85.)

*Kooi*, 04-CV-1311, 2007 WL 951447, at *4 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.).  Rule 56 of

the Federal Rules of Civil Procedure provides that summary judgment shall be granted if the

pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that

there is no genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248

(1986); *Bortell v. Eli Lilly & Co.,* 406 F. Supp. 2d 1, *4 (D.D.C. 2005).  The requirement that an

issue of material fact be "genuine" regards its admissibility.  *Liberty Lobby, Inc*., 477 U.S. 242,

at 248.  "We do not mean that the nonmoving party must produce evidence in a form that would

be admissible at trial in order to avoid summary judgment."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 324 (1986).  Rather, evidence "considered on summary judgment must be reducible to

admissible form."  *Figueroa v. Mazza*, 825 F.3d 89, 98, n.8 (2d Cir. 2016); *Grabin v. Marymount

Manhattan Coll.,* 659 F. App'x 7, 9 (2d Cir. 2016).

As a result, the Court must consider whether Plaintiff Barton's testimony (as well as

other evidence in the record) regarding each of these individuals "can[] be presented in a form

that would be admissible in evidence" at trial.  Fed. R. Civ. P. 56(c)(2).

### 1.  Plaintiff Barton's Testimony Regarding Brittany Kolomiets

Defendant argues that the evidence presented regarding Brittany Kolomiets is

inadmissible hearsay pursuant to Fed. R. Evid. 801 and 802.  (Dkt. No. 72, Attach. 6.) Although

Plaintiff Barton did originally learn that Ms. Kolomiets was on "light duty" due to her pregnancy

from a fellow Correction Sergeant, she also testified that she personally observed Ms. Kolomiets

in a "light duty" status when she returned to work from leave.  (Dkt. No. 61, Attach. 14, at

147.)[12]

---

[12]     Of course, out-of-court conduct not intended as an assertion is not an out-of-court
"statement" for purposes of Fed. R. Evid. 801.  *See, e.g., Mims v. Oliver*, 15-CV-0644, 2017 WL

Although the Court does not need an additional ground on which to rely for the admission of this evidence, the Court notes that, thus far, Defendant appears to have been evasive in its discovery responses on this issue.  In its reply memorandum of law, Defendant responds to this evidence by offering the testimony of WCCF Division Commander, Captain Albert Maday.  Knowing that a significant issue presented by Defendant's motion is whether other similarly limited employees were allowed accommodations comparable to the accommodations denied to Plaintiff Barton, Captain Maday chose not to answer the question of whether Ms. Kolomiets was ever in a "light duty" status or granted an accommodation.  Rather, he testified,

> With respect to Brittney Kolomiets, Gregory Riley, and Cortney Howse, all three of these individuals work in the Patrol Division as Road Patrol Officers/Road Patrol Sergeants outside of the secured perimeter of the WCCF.  As such, the Road Patrol Division is an entirely separate Division from the WCCF, and Road Patrol Officers are subject to completely distinct requirements and policies than that required of WCCF Correction Sergeants and Correction Officers (i.e., Ms. Barton and Ms. Frank).

(Dkt. No. 72, Attach. 4, at ¶ 8.)  Simply stated, Defendant has conspicuously failed to address the issue of whether Ms. Kolomiets (and the two other named employees) were in fact ever on "light duty" or granted an accommodation.

---

3034032, at *6 (S.D. Tex. July 18, 2017) ("[T]he assertions, 'I did not give Defendant Oliver my cell phone number and I do not know how he got it. I did not give Defendant Oliver permission to call me,' . . . are not out-of-court statements offered for the truth of the matter asserted but statements concerning [Plaintiff Mims'] actions or non-actions."); *Kibler v. U.S.*, 03-CV-4154, 2006 WL 1891859, at *6 (S.D. Ill. July 10, 2006) ("[T]he remainder of Davis's testimony . . . contains Davis's observations of actions, not out-of-court statements offered to prove their truth. It is therefore not inadmissible hearsay."); *cf. U.S. v. Munoz-Mosquera*, No. 95-1278, 1996 WL 281591, at *2 (2d Cir. 1996) ("The visual images on the videotapes at issue were not 'oral or written assertion[s] or ... nonverbal conduct of a person ... intended by the person as an assertion,' Fed. R. Evid. 801(a), and were therefore not 'statements' subject to the hearsay rules.").

Indeed, in its reply memorandum of law, Defendant expressly identifies lack of relevance as the reason for its refusal to address this issue:

> While this perplexing new theory directly belies Plaintiffs' claims, the individuals whom Plaintiffs identity (i.e., Brittney Kolomiets, Courtney Howse, and former employee Gregory Riley) do/did not even work in the WCCF, but are/were Road Patrol Officers who worked in the Road Patrol Division; an entirely separate division that maintains distinct requirements and policies than that required of WCCF Correction Sergeants and Correction Officers (i.e., Ms. Barton and Ms. Frank)… Plaintiffs' counsel has been aware of the *irrelevancy* of these individuals' positions in the Patrol Division since at least November 17, 2021, when the County advised Plaintiffs of same in the County's discovery responses (Exhibit "T").

(Dkt. No. 72, Attach. 6, at 11-12 [emphasis added].)   Of course, "[r]elevance is a legal determination" reserved for the Court.  *Florez v. CIA*, 829 F.3d 178, 184 (2d Cir. 2016).  A party resists discovery on the ground of lack of relevance at its own peril.  As will be made clear below in Part III.E. of this Decision and Order, Defendant has wholly failed to convince this Court why this information is irrelevant.

For all of these reasons, the Court finds that the testimony of Plaintiff Barton regarding Brittany Kolomiets can be presented in a form that would be admissible in evidence at trial; and thus, the Court finds that, especially when it is taken in light most favorable to Plaintiffs, this testimony is appropriate for consideration at the summary judgment stage.

### 2.  Plaintiff Barton's Testimony Regarding Courtney Howse

Defendant argues that the evidence presented regarding Courtney Howse is also inadmissible hearsay pursuant to Fed. R. Evid. 801 and 802.  (Dkt. No. 72, Attach. 6.)  Plaintiff Barton's testimony (Dkt. No. 61 at 149.) is based on hearsay.  Plaintiff Barton did not work at WCCF during the time she asserts Ms. Howse was pregnant and was allegedly offered the

accommodation of working in central control.  Plaintiff Barton learned of Ms. Howse's

accommodation through other employees of the WCCF. (Dkt. No. 61 at 149-50.)  For this

reason, the Court finds that this evidence cannot be presented in a form that would be admissible

in evidence at trial and therefore will be precluded from consideration by the Court at this time.[13]

### 3. Plaintiff Barton's Testimony Regarding Charlene Wells

Defendant argues that the evidence presented regarding Charlene Wells is inadmissible

hearsay pursuant to Fed. R. Evid. 801 and 802.  (Dkt. No. 72, Attach. 6.)  Plaintiff Barton

testified that she directly observed Ms. Wells, a fellow Correction Officer, working without her

duty belt on, an accommodation made due to her pregnancy.  (Dkt. No. 61, Attach. 14, at 142.)

A duty belt is a belt in which Correction Officers keep their tools and weapons (such as keys and

pepper spray) while on duty.  (*Id* at 142-43.)   Plaintiff Barton also personally observed that Ms.

Wells was given more shifts in booking and central control while she was pregnant.  (*Id*. at 144.)

In this capacity, Ms. Wells was not required to directly supervise inmates or respond to duress

calls, which are standard duties of a Correction Officer.  (*Id.*)[14]

The Court notes that, in Defendant's reply memorandum of law and supporting affidavits,

Defendant fails to undermine the above-referenced evidence that Ms. Wells was given similar

accommodations while pregnant to those requested by Plaintiff Barton and therefore conceded

those arguments.  Construing all the evidence in a light most favorable to Plaintiff (the

nonmovant), the Court finds that Plaintiff Barton's testimony regarding Ms. Wells can be

presented in a form that would be admissible in evidence at trial and will therefore be considered

---

[13]     If United States Magistrate Judge Daniel J. Stewart re-opens discovery, Plaintiff may be allowed to depose Ms. Howse, which could resolve the hearsay issue.

[14]     Again, out-of-court conduct is not an out-of-court "statement" for purposes of Fed. R. Evid. 801.  *See, supra,* Part III.C.1. of this Decision and Order (citing cases).

by this Court on Defendant's motion for summary judgment.

### 4. Plaintiff Barton's Testimony Regarding Matthew Hubbard

Defendant argues that the testimony Plaintiff Barton gave regarding Sergeant Matthew

Hubbard, and the accommodations he was given after a shoulder injury, are inadmissible hearsay

pursuant to Fed. R. Evid. 801 and 802. (Dkt. No. 72, Attach. 6.) Plaintiff Barton learned of

Sergeant Hubbard's post-injury accommodation (of being transferred to the correction's

administrative office from other employees at the WCCF) when Plaintiff Barton was out on

leave. (Dkt. No. 61, Attach. 14, at 136-37.) When questioned about who had provided her this

information about Sergeant Hubbard, Plaintiff Barton could not recall the name of the person and

asserted that the information was "common knowledge." (*Id*.)

Of course, "common knowledge" is not "personal knowledge." *See, e.g., Shumway v.*

*United Parcel Serv., Inc*., 118 F.3d 60, 64 (2d Cir. 1997) (affirming summary judgment, on the

basis of insufficient evidence "to demonstrate that [defendant employer] treated similarly

situated [employees] differently," where plaintiff "admit[ted] that she has no personal knowledge

of the alleged violations but heard about them because they were 'common knowledge'"); *Scott*

*v. City of New York*, 591 F. Supp.2d 554, 566 (S.D.N.Y. 2008) ("Hearsay testimony is

inadmissible unless it is subject to one of numerous exclusions or exemptions. No such

exemption or exclusion exists for 'common knowledge' testimony. Nor may hearsay become

personal knowledge merely because a witness has internalized statements made by others and

decided they must be true.").

Plaintiff Barton's testimony was not based on personal knowledge: Plaintiff Barton was

not physically present at work to personally observe Sergeant Hubbard utilizing his

22

accommodation, and she could not even recall who provided her the information.  *See* Fed. R. Evid. 803(1), Advisory Committee's Note ("However, when declarant is an unidentified bystander, the cases indicate hesitancy in upholding the statement alone as sufficient" to demonstrate that the declarant actually perceived the incident); *see, e.g., Canton v. Kmart Corp.*, 470 F. App'x 79, 85 (3d Cir. 2012) (holding, in slip-and-fall case where plaintiff proffered her related testimony of unidentified store employee under excited utterance exception, that "inability to identify the speaker of the statements Ms. Roberts alludes to undermines any notion that this hearsay statement is reliable"); Clark v. U.S., 2013 WL 12061902, at *5 (N.D. Ga. Dec. 3, 2013) ("[I]t is not just that this 'lady' might not be available to testify, rather it is that she is also unidentified.").  For these reasons, the Court finds that this evidence cannot be presented in a form that would be admissible in evidence at trial and therefore will be precluded from consideration by the Court at this time.[15]

### 5. Plaintiff Barton's Testimony Regarding Gregory Riley

Defendant argues that Plaintiff Barton's testimony regarding Sergeant Gregory Riley, and the accommodations he was given after a knee injury, are inadmissible hearsay pursuant to Fed. R. Evid. 801 and 802.  (Dkt. No. 72, Attach. 6.)  Plaintiff Barton learned of Sergeant Riley's post-injury accommodation (of being transferred to the road patrol sergeant's office) from fellow employee Stacey Seymour.  (Dkt. No. 61, Attach. 14, at 138.)  Plaintiff Barton was out on leave when she was informed of Sergeant Riley's accommodation by Ms. Seymour.  (*Id*. at 137.)  Because Plaintiff Barton was not physically present to personally observe Sergeant Riley's accommodation, her testimony was not based on personal knowledge.   For these reasons, the

---

[15]     If United States Magistrate Judge Daniel J. Stewart re-opens discovery, Plaintiff may be allowed to depose Mr. Hubbard, which could resolve the hearsay issue.

Court finds that this evidence cannot be presented in a form that would be admissible in evidence at trial and therefore will be precluded from consideration by the Court at this time.[16]

**D. Whether Plaintiffs' Testimony Regarding Brittney Kolomiets, Courtney Howse, Charlene Wells, Matthew Hubbard, and Gregory Riley Should Be Precluded Due to Plaintiffs' Failure to Disclose Them as Potential Witnesses Pursuant to Fed. R. Civ. P. 26(a), 26(e), and 37(c)(1)**

Defendant argues that Plaintiffs' testimony regarding Kolomiets, Howse, Wells, Hubbard, and Riley should be precluded due to Plaintiffs' failure to disclose them as potential witnesses pursuant to Fed. R. Civ. P. 26(a), 26(e), and 37(c)(1). In weighing whether evidence should be precluded for a failure to disclose, the Court must consider the following four factors: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Design Strategy, Inc. v. Davi*s, 469 F.3d 284, 296 (2d Cir. 2006).

Applying these factors, Defendant asserts the following four arguments: (1) Plaintiffs failed to offer any explanation for their failure to disclose this testimony; (2) the testimony regarding the aforementioned individuals is not important given Defendant's assertion that all "light duty" positions were eliminated by NYSCC's December 2013 Staffing Analysis; (3) a continuance would unlikely bear fruit, because Plaintiffs failed to take a single deposition from County employees despite being granted several discovery-deadline extensions in which to do so; (4) in addition, a continuance would unfairly prejudice Defendant given the length of litigation to date, the extended discovery afforded, and the extensive time and resources spent on this case. (Dkt. No. 83.)

---

[16]    If United States Magistrate Judge Daniel J. Stewart re-opens discovery, Plaintiff may be allowed to depose Mr. Riley, which could resolve the hearsay issue.

24

In response, Plaintiffs argue that (1) Defendant obstructed the discovery process and failed to disclose the names and records of the individuals mentioned in Plaintiff Barton's testimony which impeded timely disclosure, (2) the testimony is critical to Plaintiff Barton's disparate treatment claim, (3) there is no prejudice to Defendant given that they have known the sum and substance of the testimony since the beginning of the case, and (4) if the Court does find prejudice, discovery could easily be re-opened (given that no trial date has been set).  (Dkt. No. 85.)

The Court has wide discretion in determining whether sanctions are appropriate under Fed. R. Civ. P.  26 and 37.  *Patterson v. Balsamico,* 440 F.3d 104, 117 (2d Cir. 2006). Preclusion is a drastic remedy and should be used only when a party has shown bad faith. *DiPirro v. United States,* 43 F.Supp.2d 327, 340 (W.D.N.Y.1999).

After evaluating the *Design Strategy* factors, the Court will not take the drastic remedy to preclude Plaintiff Barton's testimony.  The Court is concerned that discovery requests may not have been properly answered regarding the aforementioned individuals or others similarly situation.[17]  The testimony is critically important.  Whether the named individuals received similar accommodations as those requested by Plaintiff Barton is amongst the most important factual issues in this case.  On its face, the 2013 Staffing Analysis did not preclude "light duty" positions.  (Dkt. No. 61, Attach. 7, at 1.)   Moreover, the issue of whether other employees were placed on "light duty" is not dispositive of Plaintiffs' disparate treatment claim.  The duty status of an employee matters less than whether an accommodation was made to that employee.  If an employer transfers an employee to another department or grants him accommodations to make

---

[17]     However, it is not lost on the Court that Plaintiff has had ample opportunities to express these concerns during protracted discovery phase or in the time since it has closed.

his duties less onerous or dangerous, but that employee retains his full duty status, then the employer's failure to grant the same accommodation to a similarly limited employee could still conceivably constitute disparate treatment.

Furthermore, this Court is wholly unconvinced by Defendant's numerous attempts to argue that accommodations granted to Road Patrol Division employees are irrelevant. Defendant has cited no law, policy, or evidence showing that this Court should consider only the accommodations (or lack of accommodations) extended to a specific subset of Warren County Sherriff Department employees. The named Defendant in this case is the County, and Defendant County cannot, without justification, narrow the aperture through which the Court examines which County employees received accommodations. The Court finds it entirely relevant that employees from Defendant County's Correction Division and Patrol Division may have been granted accommodations for pregnancy, or another issue causing similar limitations, while Plaintiff Barton's request for such accommodations was denied. No showing has been made by Defendant that considering such employees here would result in a fundamental alteration in the operation of the Warren County Correctional Facility or would amount to anything more than "a claim that it is more expensive or less convenient" to do so. *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 208 (2015).

Although litigation in this case has indeed been protracted, the Court finds that the potential prejudice of allowing this information to be considered is not unfair given that no trial date has been set, and both parties have been granted opportunities for additional submissions and deadline extensions throughout this case.

Given the concerning nature of Plaintiffs' claims of obstruction during discovery, and a

potential lack of disclosure on critical items such as the names and records of employees who were granted accommodations, the Court is inclined to issue an Order re-opening discovery for the limited purpose of ensuring that these records are turned over and that Plaintiff has a reasonable opportunity to depose these potential witnesses.  However, given the extensive history of this case, and the numerous discovery motions that have been filed, the Court will leave that decision to the sound discretion of Magistrate Judge Daniel J. Stewart after remand.

### E. Whether, Based on the Admissible Record Evidence, There Is a Genuine Dispute of Material Fact Regarding Whether Defendant Accommodated Other Employees Similar in Their Inability to Work

After carefully considering the matter, the Court answers the question in the affirmative for the reasons stated in Plaintiffs' opposition memorandum of law. *See, supra,* Part I.C.2. of this Decision and Order.  To those reasons, the Court adds the following analysis.

As the movant, Defendant has the burden to show a genuine issue of material fact.  As previously discussed, whether a dispute of a fact is genuine speaks to its ability to be reduced to admissible evidence at trial.  *Anderson,* 477 U.S. at 248.  Materiality speaks to whether the disputed fact might affect the outcome of a case.  *Id.*  Whether a fact is material depends on its relation to the legal elements of the claim.  *Id.*

Defendant argues that Plaintiff Barton has failed to demonstrate a prima facie case because she has adduced no admissible facts to show disparate treatment.  Plaintiffs' initial burden is not onerous and is required to show only that (1) she belongs to a protected class, (2) she sought an accommodation, (3) her employer did not accommodate her, and (4) her employer did accommodate others similar in their inability to work.  *Legg,* 820 F.3d at 74; *Young*, 575 U.S. at 210.

Plaintiffs have met their prima facie burden for disparate treatment.  It is undisputed that Plaintiff Barton was pregnant, that she requested an accommodation in the form of a doctor's note, and that Defendant denied her accommodation request.  Regarding the final element (i.e., that the employer did accommodate others similar in their inability to work), Plaintiffs has offered evidence (through the testimony of Plaintiff Barton, Plaintiff Frank, and non-party Steven Frank) that six employees of WCSO (LaPell, Nason, Robinson, Kolomiets, Wells, and Howse) were provided similar accommodations (as those requested by Plaintiff Barton) for their inability to perform their duties:  Kolomiets, Wells, Robinson, and Howse were purportedly given accommodations due to pregnancy, and Nason and LaPell due to injury.  (Dkt. No. 61, Attach. 14, Attach. 17, Attach. 19.)  This evidence is reducible to an admissible form at trial, because the evidence was adduced from personal knowledge (by those who provided the testimony).   Additionally, Plaintiffs have provided evidence that "light duty" is an allowable practice by the Defendant as the County's 2018-2020 Collective Bargaining Agreement specifically recognizes "light duty" as a contractual obligation in several provisions.  (Dkt. No. 86, at 31-32.)[18]

Because Plaintiffs have met their low prima facie burden, a presumption of discriminatory intent arises.  *Legg,* 820 F.3d at 74.  In response, Defendant argues that "light duty" positions were effectively eliminated by March 2014 due to the Staffing Analysis which

---

[18]     Defendant also argues that, when her accommodation was denied, Plaintiff Barton did not suffer an actionable adverse employment action, but merely a disappointment or setback, pursuant to the definition of "materially adverse" used by the Second Circuit in *Galabya v. New York City Bd. Of Educ*., 202 F,3d 636, 640 (2d Cir. 2000).  The definition of "materially adverse" used in *Galbaya,* was abrogated by the Supreme Court in *Burlington N. & Santa Fe Ry. Co. v. White* in 2006, and replaced with a less-onerous definition that the challenged action need only dissuade a reasonable employee from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, (2006).

created a new requirement for two full-duty officers in the correction facility's CCR.  (Dkt. No. 61, Attach. 7 at 1.)   Defendant further argues that prior to this requirement, a "light duty" individual could have been assigned to the CCR, and this was the only "light duty" position within the Correction Division.  (Dkt. No. 61, Attach. 22.)  In reply to Plaintiffs' evidence of six individuals receiving accommodations for a similar inability to work, Defendant states that Nanson, and LaPell were medically retired shortly after limited duty positions were eliminated and that Kolomiets, Wells, and Howse are irrelevant to the claim as they worked in the Road Patrol Division, outside of the WCCF.  (Dkt. No. 72, Attach. 6.)  They further argue that the evidence regarding Robinson is inadmissible and should be precluded.  (Dkt. No. 72, Attach. 6.)[19]

There are genuine disputes of material fact regarding whether Defendant County did accommodate other employees similar in their inability to work.  Five of Defendant's statements of material facts (i.e., Fact Nos. 19, 20, 21, 22, and 23) were specifically denied on this issue.  (*Compare* Dkt. No. 61, Attach. 21 *with* Dkt. No. 66, Attach. 1.)   Defendant's argument that the Staffing Analysis from 2013 eliminated light-duty positions from the WCCF is unavailing.  Upon careful review, the document does not appear to be a policy mandate that eliminated positions.  Rather, it appears to be an analysis of the staffing needs of the WCCF in order to inform County officials for purposes of future policy decisions.  The Court gleans this latter information from the statement, "You should submit any comments you have on this Position and Staffing Analysis, as well as the county's plan of action to meet these requirements, by January 30, 2014."  (Dkt. No. 61, Attach. 7 at 1.)  Further, Plaintiffs have offered evidence of

---

[19]     The Court held that Plaintiffs' evidence regarding Robinson will be considered in a previous section of this decision.  *See, supra,* Part III.B.

numerous examples where the recommendations of this Staffing Analysis were not followed, which Defendant did not address.  (Dkt. No. 67.)   Defendant has not articulated why the Court should treat the Staffing Analysis as a binding policy document (rather than a staffing study) and has not submitted any formal policy documents which did eliminate "light duty" positions from the WCCF.[20]

Additionally, the fourth criteria for a disparate treatment claim is whether another employee was granted an accommodation due to a similar inability to work, not whether an employee was placed on "light duty" (as Defendant has argued).  The duty status of an employee is informative, but not determinative.  The analysis focuses on accommodations made, regardless of duty status.  If Defendant denied Plaintiff Barton's requested accommodations but transferred other employees (similarly unable to work) to another department, or adjusted their duties, while they remained in a full-duty status, it would constitute evidence of disparate treatment.  Denying that an individual was placed on "light duty" is distinct from denying that employee was granted an accommodation.   For this reason, when Defendant responds to Plaintiffs' evidence of accommodations granted to other employees by denying that these individuals were placed on "light duty," their response is inadequate, avoids the relevant question, and will be treated as an admission that an accommodation occurred.  (Dkt. No. 72, Attach. 6, at ¶ 6.)

Further, Defendant has failed to respond to the testimony that Brittney Kolomiets and Cortney Howse were granted accommodations.  Through Captain Maday's testimony and in their memoranda, Defendant argues that these accommodations are irrelevant because the two employees worked in the Patrol Division (as Patrol Officers), not as Correction Officers.

---

[20]      In fact, the only policy document submitted to the Court, the Collective Bargaining Agreement, specifically recognizes "light duty" as a contractual obligation.  (Dkt. No. 86, at 31-32.)

However, Defendant has offered no law, policy, or evidence, as to why the accommodations of these employees should not be considered.  Defendant's only response is that Road Patrol is "an entirely separate Division" and is subject to "distinct requirements and policies."  (Dkt. No. 72, Attach. 4, at ¶ 8.)  Defendant has failed to articulate why a transfer to the Investigations Division, Patrol Division, administrative offices, or any other department or division was not a viable option for Plaintiff Barton, when it appears that it was for other employees.

There is also a genuine issue of material fact regarding accommodations provided to David LaPell and Robert Nason.  As an initial matter, Defendant seems to contradict itself as to whether these individuals left the WCCF due to "termination" or "retirement."  (*Compare* Dkt. No. 72, Attach. 4, *with* Dkt. No. 72, Attach. 6.)   In any event, it is entirely unclear whether LaPell and Nason remained employed by the WCCF (and in what status) after 2014.  Plaintiffs denied Defendant's Statement of Fact Numbers 20 and 21 that Nason and LaPell's "light duty" status was terminated in 2014 (citing Captain Maday's testimony).  Defendant's own statement of fact also states that an administrative hearing regarding termination from "light duty" occurred in 2017 and 2018, which further begs the question whether these Officers remained employed by the WCCF post-2014. (Dkt. No. 61, Attach. 21.)

Finally, there is "sufficient evidence that the employer's policies impose a significant burden on pregnant workers, and that the employer's legitimate, nondiscriminatory reasons are not sufficiently strong to justify the burden, but rather—when considered alongside the burden imposed—give rise to an inference of intentional discrimination."  *Young v. United Parcel Serv., Inc.,* 575 U.S. 206, 210, (2015).  Taken at face value, Defendant's current policy is that if a woman becomes pregnant as a Correction Officer in Warren County, she must do one of the

following three things: (1) resign, (2) remain in full-duty status for the duration of her pregnancy (potentially against medical advice) risking the wellbeing of her child responding to emergencies caused by violent prisoners, or (3) utilize her sick leave balance and thereafter take unpaid leave (and risk losing health insurance coverage), as she prepares to give birth.  Even if it is indeed true that all employees are treated equally in this manner, this policy constitutes sufficient evidence that the County imposes a significant burden on pregnant workers (as a protected class) without nondiscriminatory reasons that are sufficiently strong to justify this burden.  Although not enacted at the time of this incident, recent federal legislation (enacted in June 2023) would seem to prohibit such a policy.[21]  Therefore, for the aforementioned reasons, Defendant has failed to articulate a non-discriminatory reason for denying Plaintiff Barton's requested accommodations.

**F.  Whether There Is a Genuine Dispute of Material of Material Fact Regarding the Alleged Retaliatory Action Taken Against Plaintiff Frank**

---

[21]     "SEC. 103. NONDISCRIMINATION WITH REGARD TO REASONABLE ACCOMMODATIONS RELATED TO PREGNANCY.  It shall be an unlawful employment practice for a covered entity  to-- (1) not make reasonable accommodations to the known limitations  related to the pregnancy, childbirth, or related medical conditions of a qualified employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; (2) require a qualified employee affected by pregnancy, childbirth, or related medical conditions to accept an accommodation other than any reasonable accommodation arrived at through the interactive process referred to in section 102(7); (3) deny employment opportunities to a qualified employee if such denial is based on the need of the covered entity to make reasonable accommodations to the known limitations related to the  pregnancy, childbirth, or related medical conditions of the qualified employee; (4) require a qualified employee to take leave, whether paid or unpaid, if another reasonable accommodation can be provided to the known limitations related to the pregnancy, childbirth, or related medical conditions of the qualified employee; or (5) take adverse action in terms, conditions, or privileges of  employment against a qualified employee on account of the employee requesting or using a reasonable accommodation to the known limitations related to the pregnancy, childbirth, or related medical conditions of the employee." H.R.2617 - Consolidated Appropriations Act, (Dec 29, 2023).

After carefully considering the matter, the Court answers the question in the affirmative for the reasons stated in Plaintiffs' opposition memorandum of law. *See, supra,* Part I.C.2. of this Decision and Order.  To those reasons, the Court adds the following analysis.

Here, again, Defendant as the movant has the burden of showing that no genuine issue of material fact exists.  Defendant argues that Plaintiffs has not met their prima facie burden of showing the following: (1) participation in a protected activity, (2) the employer was aware of the protected activity, (3) the employer took an adverse employment action against the plaintiff, and (4) a causal connection exists between the protected activity and the adverse employment action. *Jute,* 420 F.3d at 173.

Defendant concedes that Plaintiff participated in a protected activity, and that the County was made aware of this protected activity when Plaintiff reported harassment by a fellow employee (related to her pregnancy) to her supervisors.  Defendant also concedes that there was an adverse employment action taken against Plaintiff Frank (i.e., the decision to not offer her permanent employment).  Remaining in dispute is the fourth element (i.e., whether a causal connection exists between the protected activity and the adverse employment action).

### 1.  Whether There Is a Genuine Dispute of Material Fact Regarding a Causal Nexus Between Plaintiff Frank's Protected Activity and the Adverse Employment Action

Defendant argues that there is no causal nexus between Plaintiff Frank reporting harassment to her supervisors and her effective termination.  (Dkt. No. 61, Attach. 22.)  In support of this argument, Defendant cites evidence of poor performance and policy violations by Plaintiff Frank as the reason for her effective termination.  (*Id.*)  For example, Defendant cites three incidents to justify termination, twice falling asleep on duty, and failing to conduct a proper

contraband search of a suicidal inmate.  (*Id.*)  The first two incidents do not appear to have been

seen as fire-able offenses by Defendant, given they occurred long before Plaintiff Frank's

effective termination and were handled with disciplinary warnings.  (Dkt. No. 61, Attach. 11.)

Defendant argues that the third incident (a purported failure to conduct a thorough

contraband search) was serious misconduct and prompted Defendant not to offer Plaintiff Frank

permanent employment.  (Dkt. No. 61, Attach. 22.)  Defendant argues that the Court should

disregard the close temporal proximity between Plaintiff Frank's reporting of harassment and her

termination, given that Defendant has demonstrated a clear non-discriminatory reason for her

effective termination.  In the alternative, Defendant contests Plaintiffs' assertion that the time

between the protected activity and termination was thirty days and argues that the WCCF

leadership was aware of that protected activity up to forty-two days prior to Plaintiff Frank's

termination, making the causal nexus too attenuated.

Although there is a genuine dispute of material fact as to when County supervisors were

made aware of the alleged harassment reported by Plaintiff Frank, this Court finds that the

possible twelve-day difference in the parties' narratives is not determinative.  The Second Circuit

has not articulated a bright-line rule regarding how much time between the protected activity and

adverse employment action would make it too attenuated.  Here, given the evolving nature of the

incident where multiple supervisors at different levels of seniority addressed the harassment

issue with Plaintiff Frank after she made her report, this Court finds that the two events are close

enough in time to establish a causal nexus.  As a result, the Court finds that Plaintiff Frank has

met her prima facie burden.

### 2.  Whether There Is a Genuine Dispute of Material Fact as to the Pretextual Nature of Plaintiff Frank's Effective Termination

Defendant argues that Plaintiff Frank's poor performance during her probationary employment period was the non-discriminatory reason for her effective termination. (Dkt. No. 61, Attach. 22.) Defendant cites evidence that Plaintiff Frank fell asleep twice on duty and failed to conduct a proper contraband search of a suicidal inmate. (*Id.*) Defendant further argues that the failure to conduct a proper contraband search was serious misconduct and prompted termination. (*Id.*) Inspector Barboza testified that she observed Plaintiff Frank conducting an improper contraband search while watching a live video feed from the CCR. (Dkt. No. 72, Attach. 1, at 2.) Defendant has met its burden of demonstrating a non-retaliatory reason for termination.

In response to Defendant's Statement of Material Facts, Plaintiffs deny that Plaintiff Frank was disciplined for failing to conduct a proper contraband search. (Dkt. No. 66, Attach. 1, at ¶ 52.) Plaintiffs offer testimony from Plaintiff Frank stating that she did conduct a proper cell search in accordance with protocol and training, and the report of an improper search was used as a pretext for her firing. Plaintiff Frank testified that the actual reason that she was fired was due to her complaint of harassment and her requested accommodation to not work overtime due to her pregnancy. (Dkt. No. 66.) Plaintiff also offers the testimony of Stephen Frank, a fellow Correction Officer at the WCCF and Plaintiff Frank's husband. (Dkt. No. 66, Attach. 3.) Stephen Frank testified that he became familiar with the operations of the CCR during his career as a Correction Officer and that the camera that records the cell where Plaintiff Frank conducted the contraband search (Cell#2, Pod B) does not actually record the inside of the cell, and thus Barboza's claim that she observed Plaintiff Frank conduct an improper cell search was "impossible." (*Id.*) Stephen Franks also testified that a proper contraband search can be

conducted in "15- 30 seconds."  (Dkt. No. 61, Attach. 19.)

In reply, Defendant challenges whether Stephen Franks has sufficient personal knowledge, given his low rank, to understand the functionality of the cameras in the CCR.  (Dkt. No. 72, Attach. 6.)  Defendant does not deny that the CCR cameras did not actually capture Plaintiff Frank conducting the search.   Inspector Barboza's memorandum documenting the event stated that she observed Plaintiff Frank entering and then leaving the cell in approximately twenty seconds.  (Dkt. No. 72, Attach. 1, at 2.)  Barboza further stated that, even with eleven years of experience, she could not conduct a proper contraband search of a cell in twenty seconds or less.  (*Id.*)

Drawing all reasonable inferences in favor of Plaintiffs (as the non-moving party), the Court finds that there is a genuine dispute of material fact as to whether a proper contraband search of a suicidal inmate's cell can be conducted in twenty seconds or less.  If a proper search can be done in that time, then the offered non-discriminatory reason for Plaintiff Frank's termination could be reasonably called into question as pretextual in nature.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 61) is **DENIED**.

**ORDERED** that the case be referred to United States Magistrate Judge Daniel J. Stewart for determination as to whether discovery should be re-opened for the limited purpose of ensuring proper discovery responses from Defendant regarding employees who received accommodations and for the opportunity for Plaintiff to depose those employees.

Dated:  June 13, 2023
       Syracuse, NY

Glenn T. Suddaby
U.S. District Judge